AZUBAH CHASE *vs.* EUSTACE C. FITZ, executor.

Suffolk. November 15, 1880; January 10. — March 3, 1882.

An oral agreement to execute an ante-nuptial contract is within the statute of frauds; and if an oral agreement to marry is dependent upon such an agreement, and a part of it, no action can be maintained upon it.

If an action for the breach of a promise of marriage will survive against the executor of the promisor, where special damage is alleged, an allegation of special damage for not executing an ante-nuptial contract which is within the statute of frauds is not sufficient to bring the case within the rule.

LORD, J. This action has been argued as if it were an action of contract for breach in the performance of a marriage contract between the plaintiff and Gardner Chilson, the defendant's testator; and it has been presented to the court as if the only question to be argued was whether, as mere matter of law, an action for a breach of promise to marry survives against the

executor or administrator of a deceased party, who failed to perform a promise of marriage made in his lifetime.

It is true that what may perhaps be designated as the first count in the declaration states facts which *inter vivos* might be construed as a promise of marriage, and a breach of such promise, and so, possibly, might the second count in the declaration. These counts together make about ten lines. They are followed by some three or more pages of printed matter, containing what are supposed to be some half-dozen more counts for the same cause of action; for each one of these counts alleges a promise on the part of the defendant's testator to marry the plaintiff, and several, if not all of them, allege the promise to have been made at the same time and to be performed at the same time. For example, the second alleges the promise to have been made on or about December 1, 1876, and that it was to be performed by consummation of the marriage the following spring; and every other count which alleges any time of the making of such promise and its performance makes the same allegation. It were puerile to undertake to say that the promises alleged in the different counts were different promises, or that there was any different cause of action intended in the first and second counts from the causes of action set out in all the other counts.

Upon examining the declaration, it is entirely clear that no valid promise of marriage by the defendant's testator is declared on. The contract, as stated in the various counts, is a verbal contract, and, taking all the language of the counts, it is entirely clear that what the plaintiff now relies upon is an agreement, upon the part of the defendant's testator, to execute an antenuptial contract. The declaration alleges that it was a part of the agreement which she seeks to enforce, that Chilson, the testator, agreed to pay her during their joint lives the sum of one thousand dollars annually and at that rate for any fraction of time, commencing at their marriage and payable semiannually, and further promised that at his death his executors or administrators should pay her if living the sum of twenty-five thousand dollars, " but such sum shall not be payable to her heirs and assigns if she shall not survive, but said sum shall be payable to her if she shall survive him; " and then further alleges that " the plaintiff in consideration thereof and of said ante-nuptial

agreement released all right, title and interest, claim and demand in and to the estate of the said Chilson which she might have as his widow by way of dower, homestead, distribution or probate allowance, and she accepts the provisions of this contract in full lieu and release of all such interests and claims upon said Chilson's estate."

Without regard to the statement of the plaintiff, "that said several declarations are for one and the same cause of action," and without regard to the statement in the plaintiff's brief, that " the agreement to marry and the agreement to pay in consideration of marriage are one inseparable contract and indivisible," it is certain that the only promise relied upon by the plaintiff is the promise in what would have been the ante-nuptial contract if that contract had been executed by the parties. It of course cannot be contended, on this declaration, that such a contract was made in writing, or that an action could be sustained upon any such agreement if not in writing. It would leave but little if anything of the statute of frauds to hold that a party might be mulcted in damages for refusing to execute in writing a verbal agreement which unless in writing is invalid under the statute of frauds. We therefore have no hesitation in determining that the defendant's testator entered into no valid engagement to marry, and that the marriage, if promised, was only one of a large series of stipulations and counter-stipulations dependent upon each other, and which required a writing for their validity. Gen. Sts. *c.* 105, § 1, *cl.* 3.

Although this view of the subject disposes of the action, inasmuch as there was argued before us the naked question whether an action for breach of marriage promise survives against an executor or administrator, and as it may be contended that the first and second counts set forth such a cause of action, and that, upon a trial of the cause, there would appear to have been no other contract than the mutual promise to marry each other, we deem it advisable to decide the question which was argued to us, upon the supposition that the parties desire it decided, and suppose it to be properly before us.

It is, however, to be observed, that neither the first nor the second count alleges any special damage, whatever that phrase may be understood to mean, and the only difference between

them is this: the second count alleges the time of the contract and the time when it was to be performed, while the first count alleges neither time.    Upon these counts it is clear that an action against the executor cannot be maintained.    The precise question has been decided in this Commonwealth in *Stebbins* v. *Palmer*, 1 Pick. 71.

Although the point was decided in that case, yet it was not decided in an action brought upon the contract to marry.    In that case Julia Palmer had represented to the judge of probate that Benjamin Stebbins had died some two years before, and that no person had been appointed to administer upon the estate, and represented herself to be a creditor of the estate, and that the debt that was due to her was damages for the breach of a promise to marry, upon which she commenced an action against him in his lifetime which was pending at his death, and which had been since continued awaiting the appointment of an administrator upon the defendant's estate, and as no person had been appointed, she as a creditor petitioned the judge of probate to appoint some suitable person as administrator; and the judge of probate, sustaining this view, decreed that administration upon the estate should be granted.    It is apparent that the defendant in that breach of promise of marriage suit left a widow, who, not having claimed an appeal from such decree within the time allowed by law, now entered a petition in this court for leave to appeal from such decree, upon the ground that her failure to claim it in due time was occasioned by mistake; and, as the case states, " whether justice required a revision of the decree depended on the question whether the respondent was interested as a creditor in the estate of the deceased; " and the decision of the court is based solely upon the ground that she was not a creditor of the deceased, because an action for breach of promise to marry does not survive, and the decree of the judge of probate was reversed.    And so manifestly was this the sole question in the case, that the only head-note to the report of the case is in these words: " An action for the breach of a promise of marriage, where no special damage is alleged, does not survive against the administrator of the promisor."    What is meant by the phrase " where no special damage is alleged " will be considered hereafter.

That case, which was decided in 1822, was the first case of the kind within this Commonwealth; and the only case which had occurred in England of a like nature was that of *Chamberlain* v. *Williamson*, 2 M. & S. 408. That, however, was rather the converse of the present case. That action was brought by the administrator of the promisee against the defendant, for breach of a promise to marry the intestate, made to her in her lifetime. Each case was remarked upon by the court as being one of novel impression, which required careful consideration; and Mr. Justice Wilde, in *Stebbins* v. *Palmer*, referring to the case of *Chamberlain* v. *Williamson*, says it has been settled in England that such an action does not survive for an executor, and adds, in his terse and incisive language, " if this was rightly settled, it is decisive, for the law is unquestionably the same, whichever party may die."

These cases, as has been said, were of novel impression, which, in the language of Mr. Justice Wilde, " shows at least what the law was supposed to be before; " and he then adds, speaking of *Chamberlain* v. *Williamson*, " This is a consideration of no small weight, which, joined to the principles and reasoning of that case, is entirely convincing."

Of course, in a case of such first impression, neither of the courts deemed it necessary to say that by no possibility could a state of facts arise which would authorize such an action to be maintained by or against an executor, and they guard themselves carefully by saying that in no event can it be so unless there is an allegation of special damages. But in neither case is there any intimation of what the nature of such special damages must be, except so far as it may be implied by the remark of Mr. Justice Wilde, " whether, in such an action for special damages, she would be allowed to recover full damages, or would be restricted to those which relate to property, we do not now determine." Nor do we now deem it necessary to determine whether any case can be imagined in which an action of this kind would survive. Certainly there is nothing in this case of such a nature. The first and second counts contain no allegation of any damage; and, as we have before seen, all the other counts complain of the failure either to perform an invalid agreement or to put in writing a verbal agreement which could have no force or

effect until reduced to writing. Whatever may be meant by " the allegation of special damage," it cannot mean any damages which could be recovered without having been alleged. We have thought that an amendment which the plaintiff obtained leave to make to the last count of the declaration was for the purpose of showing a special damage. Her motion is, to amend her declaration, which before was general, " by adding to the same the following list of articles disposed of by her in contemplation of marriage, referred to in said count (and to make it a part of the same), to wit, two feather beds ; two mattresses ; bed-dressing ; twelve chairs ; cotton sheets ; pillow-cases ; a quantity of silver ware, table cutlery, iron ware, and other articles, to the value of two hundred and fifty dollars."

In this count, the disposition of such personal property was said to be by giving it away. There is no allegation that it was given to the defendant's testator, although it is alleged that the property was given away at his request and with his knowledge. In terms, this is alleged to be a special damage, and so it is alleged to be a special damage that she did not get the twenty-five thousand dollars which Chilson had promised her at his death, or the promised gift at the rate of a thousand dollars a year of marriage life.

Although in the declaration these are alleged to be special damages, they are not alleged to be special damages for the non-performance of a simple contract of marriage, but they are alleged to be special damages for not completing and for not consummating an agreement containing a variety of stipulations by each party, which never had force and could have no validity until reduced to writing and signed. Certainly the neglect or refusal to perform an invalid executory contract cannot be a special damage for the non-performance of a valid contract.

As before intimated, this phrase " the allegation of special damage " undoubtedly found its way into the books because of extreme caution on the part of the learned judges who were called upon to decide a case arising for the first time, and all the possible aspects of which it was not deemed necessary to anticipate. The general rule of law is, that actions *ex delicto* do not survive ; but a century ago an action of trover was brought against an administrator with the will annexed for the conversion

of property by his testator; *Hambly* v. *Trott*, Cowp. 371; and a verdict having been obtained for the plaintiff, the question arose whether the judgment should be arrested. It was twice argued, and there was such equity in the plaintiff that the court seemed desirous in some mode to sustain the action. The testator in his lifetime had converted valuable property to his own use, which was then a part of the assets of his estate. So unjust it was that this property should go to his heir, and not to the true owner, that the justices of the court, and especially Lord Mansfield, struggled to find a mode in which such injustice could be averted. He said repeatedly during the argument of counsel, that, although technically and strictly an action of trover was an action *ex delicto*, yet that substantially and really it was, as he termed it, an action of property. During the last argument of the case he is reported to have said, "An action of trover is not now an action *ex maleficio*, though it is so in form;" and also, "In substance, trover is an action of property. If a man receives the property of another, his fortune ought to answer it." But after the second argument, the court wished to advise, and subsequently ordered the judgment to be arrested; and Lord Mansfield, in delivering the unanimous opinion of the court, pointed out with great ingenuity the distinction between a wrong done or a trespass committed by a person, and the property acquired in consequence of such wrong or trespass, and said that for the act itself there could be no action against his executor after his death, yet in consequence of the act there might be such an accretion of property to his estate as that, *ex æquo et bono*, the executor should not hold it against the true owner, but that an equitable action for money had and received might be had against the administrator for the value of the property.

It is however very strongly intimated, that, unless the court could see that the plaintiff could have another remedy, the action of trover would have been held to survive; and so it has been supposed not to be decided that the action of trover at all events and under all circumstances necessarily dies with the death of the defendant. And we are led to believe that the language referred to was meant to indicate no more than this, that the court did not mean to say that the defendant in an action for breach of promise to marry might not have acquired from

the plaintiff some valuable addition to his property which, *ex aequo et bono*, his executor was not entitled to hold as against the true owner of it, although it went lawfully and with the owner's consent into the testator's hands. We are led to this conclusion from the fact that the case of *Hambly* v. *Trott*, and cases of like nature in reference to the survival of actions *ex delicto*, are the cases referred to by the court when the suggestion in relation to the allegation of special damages is made; and it is very clear that such was the idea of Mr. Justice Wilde in *Stebbins* v. *Palmer*, when he uses the language already quoted in reference to the allegation of special damages: "Whether, in such an action for special damages, she would be allowed to recover full damages, or would be restricted to those which relate to property, we do not now determine."

And we think, further, that the same decision to which we have come was reached in *Stebbins* v. *Palmer*. The same case in Cowper is referred to, and the distinction taken by Lord Mansfield is recognized as sound, and is formulated by Mr. Justice Wilde as a distinction between causes of action which affect the estate and those which affect the person only; and that the cause of action arising upon a breach of promise to marry is clearly within the latter.

We are therefore of opinion, that there is nothing in this case which in any mode distinguishes it, in relation to its surviving, from any ordinary contract of marriage; that the contract was a purely personal contract, which an executor could not perform, and which necessarily died with the person; and that the demurrer, as in the opinion of the justice who ruled upon it,

*Must be sustained.*

The case was argued at the bar in November 1880, and was afterwards submitted on briefs to all the judges.

*W. Gaston & A. R. Brown*, for the plaintiff.

*M. F. Dickinson, Jr. & H. R. Bailey*, for the defendant.