Pauline KLAEVEMAN, Appellant,

v.

L. H. KLAEVEMAN, Appellee.

No. 10456.

Court of Civil Appeals of Texas. Austin.

March 6, 1957.

Rehearing Denied March 27, 1957.

Archer & Archer, Austin, for appellant.

Vandygriff & Barcus, Austin, for appellee.

HUGHES, Justice.

This suit is by Mrs. Pauline Klaeveman, appellant, against her former husband, L. H. Klaeveman, to recover a monetary judgment due under an alleged contract made during the divorce proceedings for the support of the parties' minor children.

Trial to the court resulted in a judgment that Mrs. Klaeveman take nothing by her suit.

The parties were divorced in February, 1953, by judgment rendered in Cause No. 93,388, in the 126th Judicial District Court of Travis County, the pertinent provisions of which are:

"It further appearing that two children were born to Plaintiff and Defendant during their marriage, to-wit: Hayden Lester Klaeveman, a boy, born April 29, 1943, and George Ann Klaeveman, a girl, born October 24, 1946; and the Court having heard the evidence as to surroundings and circumstances of each of such children and the financial circumstances, character, and fitness of their parents and their ability to contribute to the support of such children, and being of the opinion that the best interest of the said children will be served if they are given into the custody of the Plaintiff; it is Ordered, Adjudged, and Decreed by the Court that the present care, custody, and control of both of said children be granted to the Plaintiff, Pauline Klaeveman, and Defendant shall have the right to visit said children, and they shall have the right to visit him at reasonable times and places.

"It further appearing to the Court, after investigation of the financial circumstances of both Plaintiff and Defendant, that the defendant is well able to contribute to the support of said children the sum of $160.00 per month, whereas Plaintiff is in straitened circumstances, and the Court being further of the opinion that right and justice and the best interest of the said children require that the said Defendant contribute to the support of the said children:

"It is therefore Ordered, Adjudged and Decreed that the said Defendant pay to the registry of this Court on or before the 10th day of March, 1953, and on or before the 10th of each month thereafter the following sums: Eighty Dollars ($80.00) for the support of Hayden Lester Klaeveman, a boy, now of the age of nine (9) years, and the same amount shall be paid on the same dates for the support of George Ann Klaeveman, a girl, now of the age of six (6) years; and it is further ordered that the said payments shall continue for each of the said children until he shall reach the age of sixteen years or until further ordered by this Court, that the said moneys shall be paid over by the registry of this Court to Plaintiff.

"It further appearing to the Court that Plaintiff and Defendant own certain community property, and that they have, by written agreement on file with the papers in this cause, partitioned said property, and the Court being of the opinion that such division of the property will be just, right, and equitable; it is therefore Ordered that said agreement is hereby approved and made a part of this judgment, and said community property is hereby divided between the parties in accordance with said agreement."

The contract referred to in the judgment, omitting formal parts, follows:

"Whereas, First Party has filed suit for divorce against Second Party, and

the parties desire to make the hereinafter stated agreement to be effective if and when such divorce is granted.

"Now, Therefore, Know all Men by these Presents:

"It is agreed that First Party shall have the custody of the children of the parties hereto, Hayden Lester Klaeveman and George Ann Klaeveman, and Second Party shall have the right to visit the children, and they shall have the right to visit him at reasonable times and places. Second Party agrees to pay to First Party as support of said children the sum of One Hundred Sixty Dollars ($160.00) per month, which sum shall be paid on or before the 10th day of each month beginning with March, 1953.

"The parties hereto agree that they will sell their home located in Austin, Texas, the same being fully described in deed from L. L. McCandless to the parties hereto, dated August 31, 1950, and recorded in Vol. 1094, Page 267, with the net proceeds from said sale to be divided equally between the parties hereto.

"It is agreed that Second Party shall have the following personal property heretofore located in said home: the mahogany bedroom suit, the desk, the coffee table, the china, crystal, pots and pans, and his personal effects such as books, papers and clothes.

"It is agreed that First Party shall have all of the furniture, furnishings and fixtures located in said home except those items set aside to Second Party in the last preceding paragraph.

"It is further agreed that First Party shall receive the automobile owned by the parties hereto, with First Party assuming the indebtedness outstanding against the automobile in the sum of approximately Four Hundred Forty-Eight ($448.00) Dollars, payable in monthly installments of Twenty-Eight Dollars ($28.00) each.

"In testimony whereof, the parties have caused the agreement to be executed by and through their attorneys of record, thereunder duly authorized, the date first above stated."

About March, 1954, the court, on application of Mr. Klaeveman, reduced the support payments from $160 to $100 per month which latter amount has been paid. It is the difference in these amounts for a period of 13 months that is sued for here.

Mr. Carl Hardin, Jr., a witness called by appellant, testified that he was an attorney and represented Mr. Klaeveman in the divorce suit and regarding the making of above contract testified:

"If my memory serves me correctly, we met here, and the case was called, and the evidence was put on, and, as I say, if my memory serves me correctly, we—the Court called a recess, in hopes that we could work out the differences of opinion pertaining to the settlement of the community property and to try to arrive at some figure which we could recommend to the Court.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Was it the intention of the attorneys at the time to present this as a recommendation to the Court for his finding? A. We would have had—it was my understanding that we were to try to resolve the differences between us, if we could, in an amicable manner, that the parties themselves would know better what could be used by themselves and who would need what, than perhaps the Court could, if they could reach an agreement along that line, that is what we were trying to do. We did reach an agreement, and we brought it back to the Court."

Mr. Herman Jones, an attorney who represented Mrs. Klaeveman in the divorce suit, also called as a witness by appellant, testified:

"Q. Was it the intent at the time of the drawing of this instrument that this be presented to the Court for his consideration in the Judgment, or was that as between the parties, and the Court Judgment would rely upon the testimony that was offered from the stand? A. Well, now, again, I cannot testify as to what might have been said at that meeting. I am sure it was the understanding of all of us that the Court had the jurisdiction to partition the community property and to fix the support payments, if any, which would be required of the father, and I am sure that everybody understood that the contract was subject to the approval of the Court as—with respect to those two matters, and that necessarily under the law, it was conditioned upon the divorce being granted, but I do not recall that there was any conversation about it, nor do I remember that there was any sort of qualification upon the contract, except what I have stated, and that is, it was conditioned upon the divorce being granted, and, of course, it was conditioned upon approval by the Court. It was executed, however, as a property settlement, with the expectation that it would meet with the approval of the Court of course, which is usually the case.

"Q. It was not an attempt at any time to usurp any of the authority of the Court, but to grant to him the full authority vested in him by the statutes; is that right? A. Well, certainly, there was no attempt to usurp the power of the Court, but, as I recall, the Court was encouraging our attempt to work this out, as this Court always does, I think."

Among the findings of the Trial Court were these:

"7. The alleged contract sued on by plaintiff in this cause was not signed by the defendant in person. His attorney in the divorce proceeding who signed the alleged contract was not authorized to sign a contract binding the defendant to pay the $160.00 or any other sum of money for an indefinite time.

"8. The attorney who signed the alleged contract for the defendant testified that it was understood at the time said alleged contract was signed that the $160.00 payment was only a temporary matter and was not binding upon the defendant, but was intended to be only for the guidance of the Court at the time the divorce was granted and was to be subject to the further orders of the Court and that defendant stated that he would 'try' to meet the payments in the amount of $160.00 per month—the amount to be either increased or decreased as the financial ability of the defendant might develop in the future."

There are several reasons any one of which is sufficient, in our opinion, to sustain the judgment of the Trial Court.

■ It is undisputed that the agreement sued upon was subject to the approval of the Trial Court. Contrary to the contention of appellant we do not believe that such agreement was approved, in toto, by the Court. An examination of the judgment will disclose that the agreement is not mentioned until partition of the community property is reached and *only* in connection with such partition is the agreement mentioned or approved. Prior to this portion of the judgment the court had, without mentioning the agreement, "after investigation of the financial circumstances of both Plaintiff and Defendant" fixed the amount of child support payments.

It will be noted too that the court put a limitation upon the support payments not found in the agreement that they should continue "until further ordered by this Court."

■ Separation agreements must be fair and equitable in order to be enforced. Link v. Link, Tex.Civ.App. El Paso, 63 S.W.2d 1045.

There was no finding in the divorce judgment that the agreement regarding support payments was fair and equitable although there was an independent finding by the court that Mr. Klaeveman was "well able" to pay the same amounts stipulated "until further ordered."

■ We are also of the opinion that such agreement was merged in the judgment and was approved only as to such terms as were not inconsistent with the judgment. Beam v. Southwestern Bell Tel. Co., Tex.Civ.App.Waco, 164 S.W.2d 412, writ ref., W.O.M. The effect of this merger is that the agreement was modified so as to retain in the court control of the support payments.

■ Appellant refers to the agreement as a "contract" and says it should be so construed.[1] In our opinion it is a "stipulation" merely dispensing with the need of proof as to the matters agreed upon and should be so construed. Its terms, the circumstances of its execution and its subsequent treatment by the parties and the courts bear out this interpretation of the agreement.

The agreement was made during a recess called by the court with the hope that the parties could settle their differences. The agreement was reduced to writing, signed by the attorneys only and filed among the papers in the cause, all in accordance with Rule 11, Texas Rules of Civil Procedure.

The agreement has been passed upon by the same court three times and in each case the court has not treated it as imposing a contractual obligation upon appellee to pay the stipulated amount of support payments, nor has appellant attempted to so construe it until this suit was filed August 30, 1955, more than a year after the court had reduced the payments from $160 to $100 per month.

The agreement regarding the support payments is wholly unrelated to the partition of the community estate. See McBride v. McBride, 256 S.W.2d 250, 253, where we held that a property settlement agreement in a divorce case which contained a provision for the support of the wife from future earnings of the husband was void as to such provision as providing for permanent alimony since it had "no connection with, is not payable from and is not referable to any property which either spouse may have owned or claimed."

Here no property is set aside for or dedicated to the payment of the childrens' support nor can it be reasonably said that the apparently equal partition of this modest community estate was considered by the parties as in any way connected with or as affecting the ability of Mr. Klaeveman to pay the amounts set out in the agreement. This ability depended entirely upon his future earnings.

Let us weigh the effect of the agreement to pay Mrs. Klaeveman "as support of said children the sum of one hundred sixty ($160.00) dollars per month," considered as a binding contractual obligation. How long does this obligation exist? Until the children are 16, 18, 21 years of age or until either or both die? Would the death of Mr. Klaeveman terminate it? We do not answer these questions because they are not presented. That they naturally arise, however, has a strong influence on

---

[1.] The agreement insofar as it relates to the custody of the children is, if con- tractual, against public policy and void. 31 Tex.Jur. p. 1289.

our conclusion that the agreement for child support is not a contractual obligation. We feel certain that the able attorneys who represented the parties in the divorce suit would not have so loosely drawn a contract of this nature and of this magnitude and we are very doubtful that they would have signed it for their clients under their general authority as counsel in the case, especially the attorney for Mr. Klaeveman. If appellant is correct then Mr. Klaeveman has, without receiving any tangible benefit, obligated himself to pay indefinitely $160 a month for the support of his children no matter what adversity may befall him and no matter what good fortune may smile upon his children or their mother.

Our thoughts here are well expressed by Justice McGill of the El Paso Court in his dissenting opinion in Kennedy v. Kennedy, 267 S.W.2d 245, 249,[2] writ ref., N.R.E., from which we quote:

"I am unable to agree with that portion of the majority opinion and judgment which in effect holds that paragraph eight of the 'Property Settlement Agreement' evidences an enforceable contract by which appellant agreed to pay to appellee the sums therein specified for support of the children, regardless of change in conditions or any change that the court should make with reference to the support of the children as specified in such paragraph.

"Manifestly the parties could not enter into an enforceable contract which would in any way impair or curtail the power and authority of the court to alter or change the provision for support contained in the decree of divorce. Such power is specifically conferred on the court by Art. 4639a, R.C.S. The majority opinion by construing this paragraph as an enforceable contract whereby appellant agreed to pay to appellee the sums therein specified for the support of the children unduly emphasizes the language 'First party agrees that he will pay' and entirely ignores the language 'that he will not contest a provision in the decree to be entered in said suit requiring that he pay to Second Party the sum of Five Hundred Dollars ($500.00) per month', etc. That the parties did not so construe this paragraph of the agreement is borne out by the fact that appellant sought to have the amount provided in the divorce decree decreased, and that the appellee in paragraph fourteen of her first amended original reply sought to have such monthly payments increased to the sum of $1,000 per month. In my opinion the correct construction of this paragraph is that the parties, in order to avoid the necessity of proof as to the amount that should be provided in the decree for support of the children, were merely agreeing that the

2. In this case the Trial Court granted an application to reduce the amount of child support payments but his judgment contained a saving clause to the effect that such reduction should not:

"* * * affect the financial obligations assumed by Applicant, as Plaintiff, James Peeler Kennedy, in the contract bearing date of January 22, A.D. 1952, made and entered into by and between said Plaintiff (Applicant), James Peeler Kennedy, and the Defendant, (Respondent), Mrs. Magory Speer Kennedy, in contemplation of divorce, but the provisions in this decree as ordered in the immediate preceding paragraph hereof

shall relate only to the liabilities imposed upon Plaintiff (Applicant) under and by virtue of the original decree dated January 30, A.D. 1952, and the provisions of Article 4639a, Section 1, Vernon's Annotated Civil Statutes of Texas, 1925, and which may be enforced by contempt proceedings."

The Trial Court's judgment was affirmed and correctly so we believe because, as we understand that case, there was no attempt there to recover on the contract and hence such liability, if any, was not adjudicated but was saved for future determination.

stipulated amounts in paragraph eight should be inserted in the decree. This construction is borne out by paragraph one of the agreement quoted in the majority opinion whereby it is stated that the parties do mutually agree that the stipulated amounts may be made a part of said decree. Since the court by Art. 4639a, R.C.S. retained continuing jurisdiction to alter or change the amounts provided for support of the children, as held in Lakey v. McCarroll [134 Tex. 191, 134 S.W.2d 1016], cited by the majority, it seems to me that paragraph eight evidences nothing more than a consent by the parties that such amounts might be inserted in the decree, and did not evidence any enforceable contract that should be binding on either party, regardless of future conditions and circumstances."

Appellant relies principally upon Brady v. Hyman, 230 S.W.2d 342, 344, and Hyman v. Brady, 230 S.W.2d 345, by the San Antonio Court of Civil Appeals, no writ history.

In that case there was an agreement made by the parties upon which the court based its judgment for partition and child support. The entire agreement is not set out in the opinion but we note these distinctions between that case and this: (1) There the agreement was "approved, confirmed and ratified" by the court in the judgment without any qualifying language. (2) The judgment there did *not* provide that the support payments should be subject to the future orders of the court. (3) The husband who was charged with the support of the children received a *"larger"* share of the community property in consideration of his promise and undertaking to adequately provide for the children."

The court there said:

"Such agreements will be respected and enforced as a part of a contractual settlement made in contemplation of divorce even though no property is hypothecated or pledged as security for the performance of the agreement. This rule is recognized in the case of Snipes v. Snipes, Tex.Civ.App., 174 S.W.2d 741."

In the Snipes case by the Fort Worth Court a monetary judgment was sustained where the consideration for the agreement for child support was the waiver by the wife of her demand that the husband's separate estate be impressed with a trust, presumably for the support of the children.

We do not consider these cases to be in conflict with our decision here because in each of them and in the several other cases which we have read [3] holding or intimating such agreements to be contractual there is a direct and substantial relation or connection between the support provision and the property rights of the parties. In those cases there is a contract whereas in this case we have a mere stipulation.

In Thayer v. Federal Life Ins. Co., 217 Wis. 282, 258 N.W. 849, 850, it is said:

"Stipulations are of two kinds: First, some are mere admissions of fact, simply relieving a party from the inconvenience of making proof. See Paine v. Chicago & North Western Ry. Co. [217 Wis. 601] 258 N.W. 846, decided herewith. The setting aside thereof may place the parties in no worse position than they were when the stipulation was made. Second, those

---

3. DeViney v. DeViney, Tex.Civ.App. Texarkana, 269 S.W.2d 936, N.R.E.; Plumly v. Plumly, Tex.Civ.App. San Antonio, 210 S.W.2d 177, writ dism.; Scott v. Fort Worth National Bank, Tex.Civ.App. Fort Worth, 125 S.W.2d 356, writ dism.; Ashby v. Gibbon, Tex.Civ.App. Amarillo, 69 S.W.2d 445, no writ history; Johnson v. Johnson, Tex.Com.App., 14 S.W.2d 805; Smith v. Blanton, Tex. Civ.App. El Paso, 240 S.W. 651, no writ history; Quere: Mobley v. Mobley, Tex. Civ.App. San Antonio, 221 S.W.2d 565, no writ history.

which have all the characteristics as concessions of some rights as a consideration for those secured. Illinois Steel Co. v. Warras, 141 Wis. 119, 123 N.W. 656, 658. Stipulations of the second class are entitled to all the sanctity of an ordinary contract, and it was held in the case cited that where the status quo cannot be re-established as to one of the parties, it is only in a plain case of fraud, mistake, or oppression that the court should set it aside. The court said: 'Especially impregnable is such a contract when the one party thereto has received and enjoyed the fruits thereof, and the other, on the face of it, has so changed his situation that he will be seriously and irremediably prejudiced.' "

We believe the stipulation here to be of the first class, supra, insofar, at least, as the provision for child support is concerned.

It is a very difficult matter for a trial judge to be fair to all parties in fixing the amount of support for children especially where the one to pay does not have a very large income or estate. In such circumstances the parties themselves are usually better qualified to arrive at a sum which is fair and reasonable than is the judge and it is highly commendable that the court encouraged counsel, as here, to "attempt to work this out."

The agreement, as we appraise it, is simply that the amount of support payments stipulated were fair and reasonable at the time of the decree and that proof in this regard was not necessary. We find nothing in this record to show that appellant changed her position in any way as a result of this support agreement. It is our opinion, therefore, that such agreement is not contractual in nature.

The judgment of the Trial Court is affirmed.