BONNIE T. DOMINICK *vs.* ANDREW A. DOMINICK.

Essex.  November 16, 1983. — May 3, 1984.

Present: ARMSTRONG, KASS, & WARNER, JJ.

*Divorce and Separation,* Oral separation agreement, Reopening of proceed-
    ings.  *Contract,* Oral separation agreement.  *Probate Court,* Judgment,
    Appeal.

In the circumstances, an oral marital separation agreement, arrived at after
    extensive negotiation and read into the record in a divorce proceeding,
    was binding on the parties even though the wife subsequently repudiated
    the agreement and refused to sign the contemplated written statement
    of its terms. [88-89]
In a divorce proceeding in which the parties had entered into an oral separa-
    tion agreement which the wife subsequently repudiated, the judge did
    not abuse his discretion in denying the wife's motion to reopen the
    proceedings, based on the wife's allegations that the experts consulted
    during the settlement negotiations had made a major error in the valuation
    of business entities owned by the parties. [90-91]
Where the wife in a divorce case repudiated an oral separation agreement she
    had earlier entered into, it was error for the judge to order entry of
    judgments of divorce nisi incorporating the oral agreement and directing
    that the agreement should survive the entry of the judgments without
    first finding that the agreement was fair and reasonable. [91-92]
Discussion of rules and statutes governing automatic stays of the operation
    of judgments of divorce nisi pending appeal. [93-95]

COMPLAINTS for divorce filed in the Essex Division of the
Probate and Family Court Department on October 10, 1980,
and June 19, 1981, respectively.

The cases were heard by *Freedman, J.*

*Richard D. Clarey (George C. Deptula* with him) for Bonnie
T. Dominick.

*David M. Wright (Jacob M. Atwood & David E. Cherny*
with him) for Andrew A. Dominick.

WARNER, J.  Cleared of the underbrush, this case presents
for the first time in Massachusetts the questions whether and in

Dominick v. Dominick.

what circumstances (1) a detailed oral marital separation agreement read into the record, with the express intention of the parties that the agreement be reduced to writing and signed, is binding absent a formal signed agreement, and (2) if such an oral agreement is binding, a party may recant before the entry of a judgment of divorce nisi which incorporates the terms of that agreement.

The trial of the parties' cross complaints for divorce began on Thursday, May 20, 1982, and was suspended in the afternoon on the request of counsel for both parties that they be allowed to conduct settlement negotiations. Discussions proceeded over the next few days between counsel and between experts retained by each party to value certain closely held entities and real estate. On May 25, 1982, counsel reported a settlement to the judge, and counsel for the husband asked that both counsel be allowed to participate in reading into the record "the bare bones" of an agreement which "we would like to incorporate in a formal agreement at a later stage but, nevertheless, to read the basic understandings into the record." There followed a detailed recitation of the parties' agreement, made with the assistance of a draft, which dealt with the transfer and retention of all of the marital assets, alimony, child support (including costs of education through college), custody, visitation and miscellaneous matters. The parties were present when the agreement was read into the record, and thereafter the judge conducted the colloquy which is set out in the margin.[1]

---

[1] THE COURT: "Did each of you hear in full what [counsel] said?"
MRS. DOMINICK: "Yes, sir, I did."
THE COURT: "Did you, Mr. Dominick?"
MR. DOMINICK: "Yes, sir."
THE COURT: "And did each of you fully understand what [counsel] dictated?"
MRS. DOMINICK: "Yes, I did."
THE COURT: "Mr. Dominick?"
MR. DOMINICK: "Yes, your Honor."
THE COURT: "And did your counsel individually explain to you during the course of negotiations what these individual clauses meant?"
MRS. DOMINICK: "Yes, they did."
THE COURT: "And do each of you feel that you have had a full knowledge of the assets and liabilities of the other party?"

Dominick *v.* Dominick.

The judge then heard evidence on the ground for divorce (irretrievable breakdown of the marriage under G. L. c. 208, § 1B) and invited the parties to submit a formal agreement for incorporation in the judgments of divorce nisi. Within about a month the wife repudiated the oral settlement agreement and retained new counsel. On July 9, 1982, the judge denied the wife's motion to reopen the proceedings, the grounds of which will be discussed below, and granted the husband's motions for the entry of judgment. On July 12, 1982, judgments of divorce nisi were entered for each party, incorporating, as the agreement of the parties, precisely the terms of the oral agreement read into the record on May 25, 1982. The wife's motions

MRS. DOMINICK: "Yes, sir."

MR. DOMINICK: "Yes, your Honor."

THE COURT: "Do either of you feel that anything of concern to either of you has been omitted from the agreement?"

MRS. DOMINICK: "Unfortunately, omissions sometimes don't appear until too late."

THE COURT: "But, Mrs. Dominick, this is the moment of truth."

MRS. DOMINICK: "I understand that."

THE COURT: "Nothing has taken place, nothing is final, but everything has to come to an end at one time and before it comes to an end, we like to have all bases covered."

MRS. DOMINICK: "I believe so."

THE COURT: "You, sir?"

MR. DOMINICK: "I concur, your Honor."

THE COURT: "And are each of you indicating your willingness to the agreement that has been dictated freely and without coercion or any possibility of fraud being exercised upon either or both of you?"

MRS. DOMINICK: "Yes."

THE COURT: "You're going to sign it freely?"

MRS. DOMINICK: "Yes, I am."

MR. DOMINICK: "Yes, your Honor."

THE COURT: "And are each of you satisfied with the agreement as dictated?"

MRS. DOMINICK: "Yes."

MR. DOMINICK: "Yes, your Honor."

THE COURT: "Now, you understand that counsel are going to prepare a formal written agreement which is going to provide all that has been dictated, and most likely will also include some standard clauses which lawyers frequently refer to as boiler plate. You may not — or I can ask you. Do you understand what I mean by boiler plate?"

MRS. DOMINICK: "I believe so."

THE COURT: "You, sir?"

MR. DOMINICK: "I believe so."

for a new trial and for relief from the judgments (Mass.R.Dom. Rel.P. 59[a] & 60[b] [1975]) were denied on August 9, 1982. The wife appeals from the denial of her motion to reopen the proceedings, the judgments, the denial of her postjudgment motions, and a judgment of contempt.

1. *The effect of the oral agreement.* The agreement of the parties was reached after lengthy and apparently intensive negotiations. Experts retained by each party conferred and arrived at valuations for the closely held entities and the real estate. Counsel for the husband prepared a draft of an agreement which was reviewed with counsel for the wife. After further negotiations, some changes were made in the draft. It was this amended draft which was used as the basis for the agreement which was read into the record by counsel. Despite the characterization of that agreement as the "bare bones" and the "basic understandings" by counsel for the husband, it contained all of the essential elements, in unusual detail undoubtedly because counsel was using the draft, of a marital separation agreement appropriate to the circumstances of the parties. The parties heard the agreement read and, in response to the clear questions of the judge, indicated that they entered the agreement freely, that it was not the product of fraud, that each had full knowledge of the assets and liabilities of the other, that each had been advised by counsel as to the meaning of the "individual clauses" and that each was satisfied with the agreement. When the wife indicated some hesitancy about possible omissions, the judge told her that "this is the moment of truth" and that "everything has to come to an end at one time and before it comes to an end, we like to have all bases covered." The wife stated her understanding of that concept and pressed the point no further. In referring to the contemplated "formal written agreement," the judge told the parties that it would include all that had been dictated into the record and "standard clauses which lawyers frequently refer to as boiler plate." The parties indicated their understanding of the term "boiler plate."

We conclude that, at this stage of the proceedings, in the particular circumstances presented, the agreement read into the record was binding on the parties. See *Burke* v. *Burke,*

204 Md. 637, 646-647 (1953); *Schlemm* v. *Schlemm,* 31 N.J. 557, 582-584 (1960); *Eisenson* v. *Eisenson,* 158 Colo. 394, 398-399 (1965); *O'Benar* v. *O'Benar,* 410 S.W.2d 214, 217 (Tex. Civ. App. 1966); *Zachry* v. *Zachry,* 185 Neb. 336, 342-343 (1970); *Markwardt* v. *Markwardt,* 617 S.W.2d 461, 462-463 (Mo. Ct. App. 1981). See also 2 Lindey, Separation Agreements and Antenuptial Contracts § 36, at 36-24 to 36-26 (1964 & 1983 Supp.); *Grumbles* v. *Grumbles,* 238 Ark. 355, 356-357 (1964); *Keeney* v. *Keeney,* 374 Mich. 660, 662-663 (1965); *Liles* v. *Liles,* 272 S.C. 511, 512-513 (1979); *Mathews* v. *Mathews,* 244 Ga. 757, 757-758 (1979); *Thomas* v. *Thomas,* 5 Ohio App. 3d 94, 97-99 (1982). Cf. *Klaeveman* v. *Klaeveman,* 300 S.W.2d 205, 209-212 (Tex. Civ. App. 1957); *Cooke* v. *Cooke,* 126 So.2d 160, 162 (Fla. App. 1961); *Crawford* v. *Crawford,* 39 Ill. App. 3d 457, 461-463 (1976); *Conrad* v. *Conrad,* 92 Wis.2d 407, 414-419 (1979); *Wallace* v. *Wallace,* 1 Hawaii App. 315, 322 (1980).[2] Although it would have been preferable had the judge made a finding that the agreement was fair and reasonable, he was, in accepting the agreement at this point, entitled to rely on the representations of experienced domestic relations counsel, the fact that each party had been advised by experts in the valuation of marital assets, the answers of the parties to the questions put by the judge, and the comprehensiveness of the agreement, to which no addition of substance was contemplated in the subsequent written agreement.[3]

---

[2] In other contexts, stipulations made in open court by the parties or their attorneys and acted upon by the court have been held to be binding on the parties. Se *Savage* v. *Blanchard,* 148 Mass. 348, 349 (1889). "Remarks, statements, or admissions by counsel during the course of the trial will also be binding judicial admissions." Liacos, Handbook of Massachusetts Evidence 16-17 (5th ed. 1981). See *Brocklesby* v. *Newton,* 294 Mass. 41, 42-43 (1936); *Dalton* v. *Post Publishing Co.,* 328 Mass. 595, 599 (1952). However, "it is well settled that the . . . court may in order to accomplish justice discharge stipulations improvidently made." *Malone* v. *Bianchi,* 318 Mass. 179, 182-183 (1945). *Pereira* v. *New England LNG Co.,* 364 Mass. 109, 114 (1973).

[3] The wife has at no time claimed that anything of substance was omitted from the oral agreement.

2. *The motion to reopen the proceedings.* On June 25, 1982, the husband filed motions for the entry of judgment in the cross actions for divorce in accordance with the agreement of May 25, 1982. On July 7, 1982, trial counsel for the wife was allowed to withdraw for the reason that the wife had repudiated the May 25, 1982, agreement. New counsel for the wife appeared on July 7, 1982, and on July 9, 1982, filed a motion to reopen the proceedings. The three motions were heard together on the latter date; the husband's motions were allowed, and the wife's motion was denied.

The question whether to allow the motion to reopen the proceedings was within the discretion of the trial judge. See *Kerr* v. *Palmieri,* 325 Mass. 554, 557 (1950).[4] The only argument that the wife advances on appeal (see Mass.R.A.P. 16[a][4]), as amended, 367 Mass. 921 [1975]) is that the judge abused his discretion in not reopening the proceedings in the face of the wife's allegations that the experts consulted during the settlement negotiations had made a major error in the valuation of business entities owned by the parties. In support of the motion the wife's counsel made general representations to the judge that he would produce a new expert who would testify that the original experts had used an improper method of valuing these entities, with the result that they were undervalued by one million dollars. The judge denied the motion, noting that the wife did not allege "fraud, misrepresentation or deceit" in connection with the settlement agreement, that before accepting the agreement he had conducted a colloquy (see note 1, *supra*) in which the wife indicated her full understanding of the underlying facts and the essential elements of the agreement and that she entered into it without coercion, that she understood the finality of the agreement, and that expert opinions regarding the value of assets such as those in question often vary widely. The wife's counsel then made an

---

[4] The motion did not refer to any rule of court as its foundation. On appeal the wife seems to argue that the motion was brought under Mass.R.Dom.Rel.P. 59(a) (1975). In any event, the standard of review is the same. See *Worcester* v. *Eisenbeiser,* 7 Mass. App. Ct. 345, 349-350 (1979).

"offer of proof" which included a written report of the wife's new expert which concluded that "[u]nfortunately, our Courts reject a speculation on future economic conditions, in most cases," and recommended that the wife seek a division of the entities in question into a "tenancy in common." There was nothing in the report to undermine the valuations established by the experts for both parties beyond the expression, acknowledged to be speculative, that future economic conditions would result in an increase in the value of the entities. There was no abuse of discretion in the denial of the motion to reopen the proceedings.

3. *The judgments of divorce nisi.* We hold that in the circumstances it was error to enter the judgments of divorce nisi incorporating the oral agreement of the parties and directing that the agreement should survive the entry of the judgments, without first finding that the agreement was fair and reasonable. Separation agreements which fix the mutual financial and property rights and obligations of a husband and wife, including those relating to a division of marital assets, are valid and binding, and specifically enforceable "absent countervailing equities," when a judge determines, at the time of the entry of a judgment of divorce nisi or thereafter, that the agreement was free of fraud and coercion and fair and reasonable at the time of the entry of the judgment, and that the parties agreed on the finality of the agreement. See *Knox* v. *Remick,* 371 Mass. 433, 436-437 (1976); *Stansel* v. *Stansel,* 385 Mass. 510, 514-515 (1982); *Moore* v. *Moore,* 389 Mass. 21, 24 (1983). Cf. *Osborne* v. *Osborne,* 384 Mass. 591, 599 (1981). Here, with ample bases in the record, the judge found before the entry of the judgments that the agreement was free of fraud and coercion and that the parties had agreed on its finality. He made no finding as to the fairness and reasonableness of the agreement. (Indeed, at the time of the entry of the judgments, the record indicates that he may have had insufficient information to allow for consideration of all of the factors necessary to such a finding.) The judge enforced the agreement, by incorporating it in the judgments, against the wishes of the wife. We think that in these circumstances the judge was required

to make an independent finding that the agreement was fair and reasonable before incorporating it in the judgments. The wife's repudiation of the agreement before the entry of judgments put the case in a posture equivalent to one in which a party to an agreement which survives a judgment of divorce nisi seeks specific performance so as to bar a complaint for modification of the judgment. See *Knox* v. *Remick, supra*; *Stansel* v. *Stansel, supra.*

In making a determination of fairness and reasonableness in circumstances such as here presented, a judge should consider at least the following: (1) the nature and substance of the objecting party's complaint; (2) the financial and property division provisions of the agreement as a whole; (3) the context in which the negotiations took place; (4) the complexity of the issues involved; (5) the background and knowledge of the parties; (6) the experience and ability of counsel;[5]  (7) the need for and availability of experts to assist the parties and counsel; and (8) the mandatory and, if the judge deems it appropriate, the discretionary factors set forth in G. L. c. 208, § 34.[6] The § 34 factors are not in any sense determinative, however, since marital separation agreements, at least as they relate to a division of assets, are almost always the product of compromise. In passing on the agreement, the judge is not required to hold an evidentiary hearing, though he may do so in his discretion. Finally, the judge is not required to divine what judgment he would likely enter if the case were fully litigated, but only whether the agreement is fair and reasonable when considered in light of the factors enumerated above and any other relevant circumstances.

---

[5] A judge cannot of course rely on this factor to the exclusion of careful consideration of the other factors.

[6] General Laws c. 208, § 1A, as amended through St. 1979, c. 362, §§ 1 & 2, requires such consideration in proceedings subject to that section: "In making its finding [as to the propriety of a written separation agreement], the court shall apply the provisions of section thirty-four [except as to marital fault]." Although § 1B, under which the divorces were granted in this case, does not expressly except marital fault in the consideration of § 34 factors, we think such an exception is consistent with legislative intent in providing a no-fault ground for divorce.

The wife argues on appeal that the oral agreement was un-enforceable under the Statute of Frauds, G. L. c. 259, § 1, because (1) it was made "upon consideration of marriage" and (2) it constituted a "contract for the sale of lands."[7] The wife also contends that the judge abused his discretion in ordering that the agreement survive the judgments.[8] Neither issue was presented in the Probate Court. "A[ ] [nonjurisdictional] issue cannot be raised for the first time before this court." *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976). See *Manes* v. *Manes,* 370 Mass. 235, 238 (1976); *Royal Indemnity Co.* v. *Blakely,* 372 Mass. 86, 88 (1977).[9]

4. *The judgment of contempt.* No stay of any of the provisions of the judgments of divorce nisi pending appeal was granted

---

[7] We note that the "consideration of marriage" provision of G. L. c. 259, § 1, Third, would seem to be inapplicable by its terms to the facts in this case. Contrast *Chase* v. *Fitz,* 132 Mass. 359 (1882). See also G. L. c. 209, §§ 25 & 26. On the record before us it is impossible to determine whether the agreement would require the wife to transfer any interest in real estate or simply her interest in entities which owned real estate. In any event, even if the agreement could be construed as constituting a "contract for the sale of lands" and the husband's insistence on its enforcement as an "action," see G. L. c. 259, § 1 & clause Third, we think the better view is that oral agreements such as here involved, when read into the record, are not subject to the Statute of Frauds. It seems clear that such an agreement when incor-porated in the judgments is not subject to the Statute of Frauds. See, e.g., *Perley* v. *Bailey,* 89 N.H. 359, 360 (1938); *Deer* v. *Deer,* 29 Wash.2d 202, 212-213 (1947); *In re Dolgin Eldert Corp.,* 31 N.Y.2d 1, 8 (1972); *Jackson* v. *Jackson,* 14 Md. App. 263, 270-271 (1972); *Wray* v. *Langston,* 380 So.2d 1262, 1263 (Miss. 1980). See also *Fitzgerald* v. *Juhlin,* 194 Or. 40, 44 (1952); *Thomas* v. *Thomas,* 5 Ohio App.3d 94, 99-100 (1982). Contra *Olson* v. *Idaho Dept. of Water Resources,* 105 Idaho 98, 100-101 (1983).

[8] We comment, however, that this argument is frivolous. The survival provision was read into the record as part of the agreement; the wife indicated that she had heard and understood the agreement and that each provision had been explained to her by her counsel; and immediately thereafter, presumably in the presence of the parties, in response to the judge's specific inquiry counsel confirmed that the agreement was to survive.

[9] In view of our disposition of the appeals from the judgments of divorce nisi it is unnecessary to consider the wife's appeals from the denial of her motions for a new trial and for relief from judgment (Mass.R.Dom.Rel.P. 59[a] & 60[b] [1975]).

by the Probate Court. Following the entry of the judgments, the wife was adjudged in contempt of court for having wilfully failed and refused to cooperate in placing for sale, in accordance with the agreement incorporated in the judgments, Florida real estate owned by the parties. The wife was sentenced to jail until she should purge herself of contempt.[10] It is unnecessary to consider the wife's appeal from the judgment of contempt, as the judgment must be vacated in view of our disposition of the appeals from the judgments of divorce nisi. We comment, however, on the rules and statutes governing automatic stays of the operation of judgments of divorce nisi pending appeal. Rule 62(d) of Mass.R.Dom.Rel.P. (1975) provides that an appeal stays execution upon a judgment except as otherwise provided in the rules. It seems clear that the term "execution" applies only to a judgment for the payment of money. See rule 69. See generally G. L. cc. 235 & 236. Rule 62(g) provides that an appeal stays the running of the nisi period but not the operation of "any other order or judgment of the court relative to custody, visitation, alimony, support or maintenance unless the court otherwise orders." The rules make no provision for the automatic stay pending appeal of the order in question in this case, related as it was to the division of marital assets, and not calling for the payment of money. Compare rule 62(a) ("Except [with respect to actions for injunction or receivership], no execution shall issue upon a judgment *nor shall proceedings be taken for its enforcement* until the time for appeal from the judgment has expired" [emphasis supplied]). Under G. L. c. 215, § 24, as appearing in St. 1978, c. 304, § 1, which makes applicable the provisions of § 23, an appeal, while staying the running of the nisi period, does not stay proceedings under orders or judgments in divorce (or separate support or child support, see G. L. c. 209, §§ 32 & 37) proceedings. Under § 24, therefore, the order in question would not be stayed and contempt proceedings would be procedurally proper. Cf. *Sloane* v. *Sloane,* 349 Mass. 318 (1965); *Gilmore* v.

---

[10] A single justice of this court stayed the sentence pending disposition of the appeals from the judgments.

*Gilmore,* 369 Mass. 598, 600 (1976); *Scholz* v. *Scholz,* 2 Mass. App. Ct. 859 (1974) (cases decided before the 1978 amendment to G. L. c. 215, § 24, but which emphasize the applicability of §§ 23 & 24 to appeals in divorce proceedings). There is no conflict between the rules and statutes. See *Boston Seaman's Friend Soc.* v. *Attorney Gen.,* 379 Mass. 414, 416-417 (1980). However, we invite the attention of the Probate Court and the Legislature to what may have been an oversight in failing to make some provision for the automatic stay of orders such as here involved pending appeal.

Those portions of the judgments of divorce nisi which incorporate the provisions of the oral agreement with respect to the financial rights and obligations of the parties, between themselves and as to the children, and the division of marital assets are vacated.[11] In all other respects the judgments are affirmed. The judgment of contempt is vacated. The case is remanded to the Probate Court for proceedings consistent with this opinion.

*So ordered.*

---

[11] While the wife's only objection was to the method of valuation of particular assets, it necessarily had a broader reach since she claimed that a proper valuation would show that there had been a substantially disproportionate division of assets to her prejudice and contrary to the intention of the parties. We cannot determine to what extent, if any, the financial and property division provisions of the agreement were interdependent. Thus we do not think it appropriate to leave any of those provisions intact pending the ultimate determination of the fairness and reasonableness of the agreement.