At issue in this appeal is the validity of a postnuptial agreement executed in April, 2011, by Mary Katherine Connors (wife) and Kevin G. Connors (husband). Almost four years after signing that agreement, in January, 2015, the wife filed a complaint for divorce and sought, among other things, to enforce the postnuptial agreement. The husband filed a counterclaim for divorce, requesting that the postnuptial agreement be declared invalid. The husband claimed that the postnuptial agreement was unenforceable because it was the product of duress and coercion and was not fair or reasonable either at the time of execution or the divorce. A joint motion to bifurcate the case and go forward first on the issue of the validity of the postnuptial agreement was allowed, and, following a trial at which both parties testified, a judge of the Probate and Family Court upheld the postnuptial agreement. The judge issued a partial judgment on divorce and counterclaim for divorce (partial judgment), as well as a memorandum of decision, dated October 26, 2016, upholding the postnuptial agreement, and issued an order dated October 27, 2016, requiring the husband to pay the wife's attorney's fees and costs in the amount of $141,665.70. After a trial as to the remaining issues regarding the divorce, the judge issued a judgment of divorce nisi (judgment) dated December 9, 2016, which incorporated the partial judgment.
The husband appeals from the judgment, claiming that the judge abused her discretion by concluding that the postnuptial agreement is enforceable and that certain of the judge's findings are clearly erroneous. The husband also appeals from the order requiring him to pay his wife's attorney's fees and costs. For the reasons that follow, the order requiring the husband to pay the wife's attorney's fees and costs is vacated; paragraph number 2 of the judgment is affirmed and the judgment is vacated in all other respects; and the matter is remanded for further proceedings consistent with this memorandum and order.
Background. We summarize the facts as found by the judge. The parties were married on August 20, 1988, and had four children, two of whom were emancipated at the time of the trial. The husband was the primary wage earner during the marriage, while the wife maintained the home and was the primary caregiver for their children. The husband earned a substantial salary and provided the family with a comfortable lifestyle. He founded or cofounded twelve health care technology companies and held the position of chief executive officer (CEO) for ten of those companies. The judge found that the husband is a successful entrepreneur and venture capital investor with extensive experience in negotiating contracts in a complex field. In 2015, the husband's gross income was approximately $500,000. Although the wife essentially had not worked for approximately thirty years, the judge found that she was employable in a sales capacity. Prior to the parties' marriage, both the husband and the wife knew of a possible future inheritance to the wife from her uncle. At some point before 2001, the parties learned that the inheritance was estimated at over eight million dollars.
The marriage was not a particularly happy one. The husband's commitment to work required frequent business travel and left little time for his wife and family. The parties' problems worsened following the birth of their last child in 2003. Soon thereafter, the wife began to suspect that the husband was having an affair with a colleague and requested that the colleague be fired. The husband denied the affair and continued to travel with the colleague, often without informing his wife. The wife's accusations and distrust of her husband's fidelity increased. On two occasions the wife physically assaulted the husband during arguments over the colleague, who eventually was fired in 2011.[2] The parties attended marriage counseling, but the strain on the marriage did not abate. Around 2008, the couple began discussion regarding a postnuptial agreement as a part of the counseling process. The husband created a document entitled "In the event of Divorce" (divorce document), with a general purpose of insulating the wife's inheritance from being included as a marital asset in the event of a divorce. The divorce document eventually became the basis for the postnuptial agreement, which was negotiated over a two-year period from 2009 to 2011.
The judge found that neither party was contemplating divorce at the time the postnuptial agreement was drafted, but that both almost certainly realized that the postnuptial agreement had implications along those lines. At first the husband was not represented by counsel, but, at the wife's insistence, the husband retained counsel, who thereafter also participated in a lengthy negotiation process. The parties eventually executed a final postnuptial agreement on April 29, 2011. The signing of the postnuptial agreement was recorded and a copy of that recording was admitted in evidence.
Like the divorce document that preceded the postnuptial agreement, the postnuptial agreement sets forth the parties' intent that the wife's inheritance be excluded from any division of the marital estate in the event of a divorce. The postnuptial agreement further provides for the equal division of all remaining property and the husband's income. Among other provisions, the postnuptial agreement recites that the parties are aware of the rights to which they may be entitled under Massachusetts law, each party has retained counsel, and each executed the agreement "freely and voluntarily." At trial, however, the husband testified he would sign whatever his wife put in front of him in order to save his marriage and show her how much he loved her. As a result, he claims, he did not push for any changes and accepted the fifty-fifty division of his income even though his attorney advised him not to.
Although the judge did not explicitly reject the husband's claims as to his motivation, she unequivocally rejected the assertion that he signed the postnuptial agreement under duress.[3] The judge found that the husband intended to be bound by the postnuptial agreement and changed his mind after the wife filed for divorce. The judge then observed that, "[a]t trial[,] husband intends to seek a greater share of marital assets (80-20) given what he perceives to be his greater contribution to the marriage, though he is concerned the present post nuptial agreement leaves him with insufficient retirement funds and a greater share of marital assets would enable him to recoup to a level he would need to support himself."
On the basis of these "facts and circumstances," the judge concluded that the postnuptial agreement was "fair and reasonable and enforceable." The judge stated that she had analyzed the factors set forth in Ansin v. Craven-Ansin, 457 Mass. 283 (2010) (Ansin ),[4] and found that those factors had been met. As to the distribution of property, the judge ruled: "The provision in the post nuptial agreement that wife's inherited property be excluded from the marital estate and parties divide equally the assets they have accumulated through their partnership is not unreasonable per se and is indeed often seen in pre nuptial agreements involving inherited property. If this [a]greement is upheld then at the divorce trial [h]usband intends to seek a disproportionate share of the non inherited marital property (80/20 in his favor) given wife's inheritance. That is a matter for the divorce."
With respect to the alimony provision, the judge stated, "While the alimony provisions for equal sharing of [husband's] income, as defined in the [postnuptial] agreement, (after excluding income from her inheritance), may not be what the Court itself would enter, I do not find it unconscionable or unreasonable at the time it was signed or at [the] time of enforcement." In reaching this conclusion, the judge "evaluated the entire context in which the agreement was reached, ... considered husband's extensive business acumen, ... allowed greater latitude here where each had independent counsel of their choosing and ... considered the [ ]magnitude of disparity between the outcome under the agreement and outcome under otherwise prevailing legal principles."
At the close of evidence in the first portion of the bifurcated trial, the judge scheduled the remaining issues for trial on November 16 and 17, 2016, and December 1, 2016. In her memorandum of decision dated October 26, 2016, the judge ruled that the postnuptial agreement was valid and enforceable, and issued a partial judgment to that effect. The judge also issued an order, dated October 27, 2016, requiring the husband to pay the wife's attorney's fees and costs as provided by the postnuptial agreement. The parties then filed a joint motion to continue the second portion of the bifurcated trial (second trial), requesting that the number of trial days be reduced from three to one, which was allowed.[5] After the one-day trial, the judge issued a judgment, dated December 9, 2016, which incorporated the partial judgement, and also incorporated and merged a parenting plan agreement dated December 1, 2016.
Discussion. 1. The postnuptial agreement. The thrust of the husband's argument is that the judge applied an improper standard of review and failed to adequately scrutinize the provisions of the postnuptial agreement. As a result, the husband claims, the judge's ruling that the postnuptial agreement is fair and reasonable and not the product of duress and coercion amounts to an abuse of discretion. The husband also argues that the judge's mistaken belief that there was to be a subsequent trial as to the division of marital property undermines her conclusion that the postnuptial agreement was fair and reasonable both at the time of execution and at the time of divorce.
We reject most of the husband's assertions. We do not agree that the judge abused her discretion by concluding that the husband signed the postnuptial agreement freely and voluntarily. The judge's determination that the postnuptial agreement was not the product of duress or coercion is amply supported by the evidence. As the judge noted, the husband is a sophisticated businessman with significant experience in contract negotiations. While the husband may have been determined to sign whatever the wife put in front of him, he did so of his own free will and with the advice of counsel. Moreover, the judge clearly understood that it was the wife's burden to prove the absence of duress and we agree with her conclusion that the wife had met her burden.
Next, we do not agree that the judge applied an improper standard when reviewing the postnuptial agreement. The judge correctly relied upon the factors set forth in Ansin and did not, as the husband claims, apply a "conscionability" standard as opposed to a "fair and reasonable" standard in deciding that the agreement was valid and enforceable. Although the judge described the alimony provision as not "unconscionable or unreasonable," we are confident that she understood the level of scrutiny required by Ansin with respect to the postnuptial agreement as to the time it was executed.
That said, we do have one significant concern. Our review leads us to conclude that in her memorandum of decision the judge was not sufficiently clear as to whether she had determined that the postnuptial agreement was fair and reasonable at the time of the divorce. We agree with the husband that the judge proceeded on the mistaken belief that the husband would have an opportunity to seek a "disproportionate share of the non inherited marital property" at the second trial. On two occasions in her detailed memorandum of decision, the judge expressly noted that the husband intended to request a greater share of marital assets at the second trial. Coupled with the judge's observation that "the alimony provisions ... may not be what the Court itself would enter," these comments suggest that the judge had some misgivings with respect to the fairness of the postnuptial agreement at the time of the divorce and that she believed that any unfairness could be mitigated at the subsequent second trial. More fundamentally, her reference to the possibility of a different division of the marital assets than that provided for in the postnuptial agreement indicates that the judge may not have fully realized that the postnuptial agreement would be binding as to the division of assets at the time of the divorce.
In considering the postnuptial agreement on remand, the judge should address only whether the agreement's provisions for alimony and the division of noninherited assets were fair and reasonable at the time of the divorce.[6] Among the factors the judge should consider are "the financial and property division provisions of the agreement as a whole" and "the mandatory and, if the judge deems it appropriate, the discretionary factors set forth in G. L. c. 208, § 34." Ansin, 457 Mass. at 298, quoting from Dominick v. Dominick, 18 Mass. App. Ct. 85, 92 (1984).
2. Attorney's fees and costs. Because the postnuptial agreement provides that a breaching party shall be liable for reasonable costs and expenses in connection with such breach and the judge concluded that the husband breached the postnuptial agreement, the judge ordered the husband to pay the wife's attorney's fees and costs. However, given our conclusion, it is no longer clear whether the husband has breached the postnuptial agreement. Thus, the question whether the wife is entitled to her reasonable attorney's fees and costs must be revisited by the judge on remand.[7]
Conclusion. The order dated October 27, 2016, requiring the husband to pay the wife's attorney's fees and costs, is vacated. Paragraph number 2 of the judgment dated December 9, 2016, is affirmed, and the judgment is vacated in all other respects. The matter is remanded for further proceedings consistent with this memorandum and order.
So ordered.
Affirmed in part; vacated in part and remanded.

The judge found insufficient evidence of an affair, but observed that the husband's failure to fire the colleague or be truthful about traveling with her contributed to the deterioration of the marriage.

The judge did "not find credible or persuasive [the] husband's testimony that he signed the document out of fear or duress." She stated: "While execution of the post nuptial agreement may be inherently stressful, that does not here rise to the level of duress to the extent that [h]usband is unable to exercise his own judgment. I do not find [h]usband, on the facts of this case, was under duress or that he did not understand or appreciate the consequences of what he was doing or that he was unable to act of his free will. Husband is a savvy and sophisticated businessman. He has a long history of developing and operating businesses in the scientific field. Indeed he has largely taught himself in this area and become very proficient. His income has been substantial. He has served on boards of directors of multiple businesses and acted as CEO at times. In this capacity he has negotiated and executed contracts, dealt with attorney's [sic ], [and] suggested revisions to contracts [that] raised capital. Through his financial efforts the parties have developed a sizeable marital estate, exclusive of [w]ife's inheritance. Wife has no such extensive business background. Husband has the further opportunity of acquiring future assets if Solace [a company formed by the husband, wife, and three others to develop a nonsurgical solution for female urinary incontinence ] is sold for example at the price range [125 to 450 million dollars] he contemplates."

The judge stated she had scrutinized the postnuptial agreement carefully to determine whether "(1) each party had the opportunity to obtain separate legal counsel of his/her choosing[;] (2) ... there was fraud or coercion in obtaining the [a]greement[;] (3) ... there was full disclosure of all assets before the [a]greement was signed[;] (4) ... each spouse knowingly and explicitly agreed in writing to waive the right to a judicial equitable division of assets and all marital rights in [the] event of divorce[; and] (5) ... [the] terms of the [a]greement were fair and reasonable at [the time of] execution and remained so at [the] time of divorce." See Ansin, supra at 291.

According to the joint motion, the parties were requesting the reduction in trial days on the ground that the "upcoming trial was intended to be a divorce trial regarding division of assets and support in the event the postnuptial agreement was declared invalid as well as on the custody and parenting plan for the parties' minor son. As the postnuptial agreement has been declared valid and enforceable, the parties only need one day for the custody and parenting plan aspect of the case."

Although the judge found that duress was "the only ground on which [the husband sought] to invalidate the [postnuptial a]greement," the husband argued at trial that the postnuptial agreement was unenforceable "[w]hether or not [he] was under duress" when he signed it. We thus agree with the husband that he preserved the argument.

Although we do not reach the issue, we note that the husband's argument regarding the scope of the attorney's fee award has merit. We have reviewed the invoices submitted by the wife's counsel in support of the amount requested for attorney's fees, and agree with the husband that the invoices are not sufficiently specific to determine the amount of time spent on enforcing the postnuptial agreement. Thus, should the wife prevail on remand, we anticipate that she will provide a more detailed request.