BETH WHITE *vs.* JAMES LAINGOR.

Worcester. February 5, 2001. - April 27, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, COWIN, SOSMAN, & CORDY, JJ.

*Divorce and Separation,* Child support, Modification of judgment. *Parent and Child,* Adoption. *Public Policy.*

An agreement to exchange paternal rights, that is, to allow the mother's new husband to adopt the children, for a reduction in child support payments was not enforceable, where there was no judicial determination that the proposed terms advance the best interests of the children. [66-69]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on September 17, 1987.

Complaints for modification and contempt, filed on May 7, 1997, and December 8, 1998, respectively, were heard by *Ronald W. King,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Craig T. Ornell* for the plaintiff.

*Troy D. Morrison* for the defendant.

IRELAND, J. This case arises from a Probate and Family Court judge's enforcement of an agreement between divorced parents of two children in which the mother agreed to accept a reduced lump-sum payment for child support arrearages in exchange for the father's consent to the adoption of the children by her new husband. When the adoption did not occur, the father argued that his mere consent to the adoption sufficed to bind the parties to the terms of the agreement. The mother countered that the probate judge's enforcement of the reduced lump-sum payment provision was contrary to public policy and, in the alternative, that a condition precedent, i.e., a successful adoption, did not occur. She appealed and we transferred the case to this court on our own motion. We conclude that where, as here, there has

been no judicial determination that the proposed terms advance the best interests of the children, an agreement to exchange parental rights for a reduction in child support payments is not enforceable. Accordingly, we vacate the order and remand for a modification of the arrearage.

I. *Background.*

The parties were divorced in 1988. In 1993, they stipulated to a judgment under which the father agreed to pay $125 a week in support of their two minor children. Two years later, the mother remarried. In March, 1997, the mother filed a complaint alleging that the father's child support arrearage totaled $13,800, and a hearing was scheduled. On May 6, 1997, just prior to the hearing, the father filed a modification complaint seeking to reduce his support obligations due to changed employment circumstances. At that point, the parties, through counsel, negotiated a verbal agreement pursuant to which the father would (1) consent to an adoption of the children by the mother's new husband and (2) make a lump-sum payment of $8,000 (representing a reduced amount of the outstanding arrearage), in exchange for a release from all past, present, and future child support obligations. On June 27, 1997, the father signed the consent to adoption forms, purchased a cashier's check in the amount of $8,000, and ceased making child support payments. However, shortly after the agreement, the parents' older child became twelve years old[1] (the age at which children can legally withhold their consent to a proposed adoption, G. L. c. 210, § 2), and she exercised her statutory rights and refused to proceed with the adoption. Without her consent, the intended adoption could not be perfected.[2] Thereafter, the father did not transmit the $8,000 agreed lump-sum and he made no further support payments.

On December 8, 1998, the mother filed another complaint

---

[1] The record is silent as to the daughter's birth date. She apparently reached the age of twelve in the nine-week span between May 15, 1997 (the date of the agreement) and July 24, 1997 (when counsel for the mother mailed notice of the child's refusal to consent to the proposed adoption).

[2] Counsel for the father was sent notice of this development on July 24, 1997.

against the father, claiming arrears in the amount of $18,000.[3] After a hearing on the complaint, the judge determined that the mother (1) "fully understood the terms the [father] proposed and the rights [she] was relinquishing" in the agreement; (2) "breached the agreement"; and (3) would be owed at least $22,765 "if the agreement between the parties had not existed." Based on these findings, the judge concluded that the father's arrearage totaled only $8,000 (the reduced amount set by the agreement), and ordered him to make future weekly payments in the amounts of $125 (toward child support) and $31 (toward arrears).

II. *Public Policy.*

In many situations, parents are in the best position to negotiate on behalf of their own interests and those of their children. However, in circumstances such as these, we harbor a real concern that the interests of the child may be compromised during the bargaining process. We therefore hold that an agreement between parents to reduce child support obligations in exchange for the surrender of parental rights, without a judicial finding that the proposed agreement is in the best interests of a child, violates public policy.

"Generally speaking the Massachusetts courts encourage the resolution of marital disputes, including support issues, by the agreement of the parties." C.P. Kindregan, Jr., & M.L. Inker, Family Law and Practice § 39.10, at 701 (2d ed. 1996). However, "[a]n agreement to fix a spouse's support obligation for minor children stands on a different footing [than interspousal agreements]. Parents may not bargain away the rights of their children to support . . . ." *Knox* v. *Remick,* 371 Mass. 433, 437 (1976). "It is therefore obvious that the public policy of the Commonwealth which requires that children be supported as completely as possible from parental resources will take precedence over the freedom of the parties to enter a binding contract" that could potentially jeopardize the children's interests. C.P. Kindregan, Jr., & M.L. Inker, Family Law and Practice, *supra* at § 39.11, at 705. This settled public policy was infringed when the mother attempted to forfeit her

---

[3]At the contempt hearing, the mother introduced a Department of Revenue statement fixing the father's arrearage at $22,765.

children's right to support in exchange for their father's consent to adoption without judicial involvement.

Selected enactments of the Legislature convey the importance of judicial review of child support agreements between parents. See, e.g., Massachusetts Child Support Guidelines (guidelines do not apply where "parties have made an agreement *which is approved by the court* and is found by the court to be fair and reasonable, and makes adequate provision for the support of the child" [emphasis added]); G. L. c. 208, § 28 ("A modification of child support may enter notwithstanding an agreement of the parents that has independent legal significance"); G. L. c. 119A, § 1 (against public policy of commonwealth for court of competent jurisdiction to enforce agreement between parents if enforcement of agreement prevents an adjustment or modification of child support obligation when such adjustment or modification is required to ensure that allocation of parental resources continues to be fair and reasonable and in best interests of child). Other jurisdictions have shared these public policy concerns.[4]

These expressions of public policy do not, however, render similar child support agreements violative of public policy per se. To the contrary, in certain circumstances,[5] a *court-authorized* agreement of this sort might be beneficial for all interested parties, including the children. In a case akin to the one at bar, for instance, adoption by a stepparent may also be in the children's best interests, and because that adoption would release the biological parent from future support obligations as a matter of

[4]See *Peregood* v. *Cosmides*, 663 So. 2d 665, 667 n.2 (Fla. Dist. Ct. App. 1995) (agreements are voidable); *Willey* v. *Lawton*, 8 Ill. App. 2d 344, 346 (1956); *Stambaugh* v. *Child Support Enforcement Admin.*, 323 Md. 106, 111-112 (1991); *Pratt* v. *Pratt*, 363 S.W.2d 54, 58 (Mo. Ct. App. 1962) (agreement upheld where consistent with child's best interests); *Monmouth County Div. of Social Servs. ex rel. D.M.* v. *G.D.M.*, 308 N.J. Super. 83, 90-92, 98 (1997); *Stanly County Dep't of Social Servs. ex rel. Dennis* v. *Reeder*, 127 N.C. App. 723, 727 (1997); *State ex rel. Raines* v. *Gilbert*, 117 N.C. App. 129, 131-132 (1994); *Kimble* v. *Kimble*, 176 W. Va. 45, 49 (1986) (agreement "confounds public policy"; remanded on question of support obligations and for determination of child's best interests).

[5]The realm of potential circumstances is governed by an elaborate statutory framework. Obviously, even before considering the best interests of the child, judges must first confirm that the proposed agreement is not precluded by statute.

law, an agreement that fixes the amount of the biological parent's past support as a lump sum, in tandem with the consent to adoption, may well be a suitable resolution. As the judge noted here, "This [type of agreement] is a very common thing that happens when people remarry . . . ." Situations may also arise in which an immediate lump-sum payment of a reduced amount (as opposed to a larger amount ordered paid over time in weekly intervals), could benefit the child. Indeed, subjecting children to all the uncertainties of future collection efforts is not necessarily in their best interests. See *Ames* v. *Perry*, 406 Mass. 236, 240-241 (1989) (public policy supports enforcement of marital agreements that lend "finality and predictability . . . and avoid[] recurrent litigation in the highly charged emotional area of divorce law").

However, before upholding such agreements, judges must be satisfied that the best interests of the child are not compromised. See *McCarthy* v. *McCarthy*, 36 Mass. App. Ct. 490, 493 (1994), and cases cited (interests of child are "weighty 'equity' "). Therefore, the probate judge must review the arrangement and explicitly conclude that the agreed terms are consistent with "the best interests of the children." G. L. c. 119A, § 1. See G. L. c. 208, § 28 (when departing from child support guidelines, written findings explaining "that such departure is consistent with the best interests of the child" are required). See *Buckley* v. *Buckley*, 42 Mass. App. Ct. 716, 723 (1997) (court may make specific written finding). As we have said, "the best interests of the child standard is one grounded in the particular needs and circumstances of the individual child in question." *Adoption of Vito*, 431 Mass. 550, 566 (2000). The judge's determination will be subject to review for "an abuse of discretion." *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999). In sum, the presence of a negotiated agreement between the parents does not exempt judges from the need to protect children. Where, as here, the judge did not make any finding that the agreed-on terms were in "the best interests of the child," the agreement to reduce child support in exchange for a

consent to adoption ran afoul of public policy and is not enforceable.[6]

III. *Conclusion.*

Because the agreement was entered into without any judicial determination regarding the best interests of the children, it is unenforceable. We vacate the order and remand the case for a modification of the arrearage consistent with this opinion.

*So ordered.*

---

[6]We briefly acknowledge the mother's alternative theory, that the contract is unenforceable where a condition precedent, i.e., the children's adoption, was not fulfilled. While she is correct, we need not address the argument in light of our discussion above.