# DEBRA H. BREYAN vs. DAVID E. BREYAN.

No. 99-P-1905.

Middlesex. January 11, 2002. - April 3, 2002.

Present: LENK, MASON, & BERRY, JJ.

*Divorce and Separation,* Separation agreement, Child support. *Contract,* Separation agreement. *Husband and Wife,* Separate support. *Parent and Child,* Child support. *Contempt.*

The judge in a divorce proceeding did not err in enforcing a handwritten memorandum of understanding drafted by the parties and incorporating it into the subsequent divorce judgment, where the detail and scope of the memorandum, the time and circumstances of its negotiation, the parties' report to the arbitrator that the matter had been settled, and the parties' partial performance of the memorandum after its execution warranted the judge's conclusion that the parties intended to be bound by the memorandum, even though the parties also contemplated that a more formal separation agreement would be prepared incorporating the terms of the handwritten memorandum [377-379]; where the judge considered all the appropriate factors in concluding that the provisions of the memoran- dum were fair [379-380]; and where the judge's finding that the husband's testimony that he did not understand the terms of the memorandum and was coerced by his attorney into signing it lacked credibility and was contrary to actual events was not clearly erroneous, thereby defeating the husband's claim on appeal that the judge failed to take into account his ill- ness in determining that the memorandum was a free, voluntary, and bind- ing agreement [380-381].

In a divorce proceeding, the husband was not entitled to a credit against his child support obligation for Social Security disability income benefits previously received for the welfare of his daughter as a result of his dis- ability that he had retained and put aside for his daughter's benefit, where the parties had specifically provided in a marital separation agreement that the husband would not be entitled to a credit for past benefits put aside for his daughter's education. [381-382]

The judge in a divorce proceeding did not err in adjudging the husband in contempt for unilaterally reducing his support payments, where the memorandum of understanding that was incorporated into the divorce judgment unambiguously provided that the husband would be required to make ongoing support payments in the amount specified, and he therefore had no reasonable basis for believing that he was entitled to a credit for Social Security disability income payments previously received for the benefit of his daughter as a result of his disability that was in existence at the time the parties created the memorandum. [382-383]

The judge in a divorce proceeding properly allocated the monthly support payment provided for in a memorandum of understanding between the parties (that was later incorporated into the divorce judgment) between alimony and child support, where the judge's finding that the parties intended that one-half of the support payment would be for alimony was based on the language used in the memorandum of understanding. [383]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on June 20, 1995.

The case was heard by *Arline S. Rotman*, J., and a motion to amend the judgment and a complaint for contempt, filed July 2, 1999, were heard by her.

*Edward J. Shagory* for David E. Breyan.

*Hanson S. Reynolds* for Debra H. Breyan.

MASON, J. Following an evidentiary hearing, a Probate Court judge in December, 1998, entered a judgment of divorce nisi incorporating a memorandum of understanding the parties had entered into regarding the terms of their separation. The memorandum provided, among other things, that the husband would make monthly support payments to the wife in the amount of $3,000 until the emancipation of the parties' minor daughter, and thereafter in the amount of $1,500. Subsequently, in August, 1999, in response to a motion by the wife to amend the judgment, the same judge entered an "Order on Judgment," interpreting the judgment as providing that the $3,000 in monthly payments would be comprised of $1,500 in child support and $1,500 in alimony. Also, in response to the wife's complaint for contempt, the judge entered a judgment holding the husband in contempt for unilaterally having reduced his monthly support payments from $3,000 to $2,000.

The husband has appealed from the judgment of divorce, the "order on judgment," and the judgment of contempt. The husband claims that he never intended to be bound by the memorandum of understanding, and asserts that it was neither fair, reasonable, nor voluntarily entered into. The husband also claims that he should have been given credit against his monthly support obligation for the Social Security disability income (SSDI) benefits his daughter had previously received as a result of a disability he suffered, and which he had put aside for her

benefit. We affirm each of the judgments and the order on judgment.

*Background.* We summarize the facts as found by the judge or as otherwise shown by the record. The parties were married in July, 1970, and separated in September, 1994. During their marriage, the parties had two children, a son born in 1974, and a daughter born in 1981.

The husband graduated from Washington University, Harvard Dental School, and Boston University Graduate School of Dentistry. During the marriage, the husband worked in private practice as an endodontist and was the principal wage earner of the family. The wife obtained a masters degree in education from Harvard University in 1990. She worked occasionally as an assistant for the husband's dental practice and also as a substitute teacher.

In 1988, the husband retired from his dental practice after he was diagnosed as suffering from obsessive compulsive disorder (OCD). At that time, the husband began receiving private disability payments and also SSDI benefits. At the time of the parties' separation, these payments amounted to $7,296 per month. The wife, on the other hand, was working part-time as a career counselor at Harvard University and was being paid $2,400 per month.

On or about June 16, 1995, the wife vacated the parties' marital residence in Weston and moved with the daughter into an apartment in Wellesley. Thereafter, in June, 1995, the wife filed a complaint for divorce alleging an irretrievable breakdown in the parties' marriage.

After the initial entry of a temporary order requiring the husband to pay the wife support in the amount of $2,000 per month, numerous pretrial conferences and trial dates were set but then continued at the parties' request. Eventually, in September, 1997, a joint motion by the parties for approval of binding arbitration was allowed by the court, and a hearing before an arbitrator was scheduled for February, 1998. On February 5, 1998, however, the parties and their respective attorneys met for the second day of the wife's deposition. At this time, the parties agreed they would seek to settle their differences in lieu of proceeding with the deposition.

The parties then spent the next several hours working out a seven-page, handwritten memorandum of understanding. The parties initially agreed to the basic terms to be included in such a memorandum, on the basis of which their counsel prepared an initial draft of the memorandum. Each lawyer reviewed the draft extensively with her and his respective client. As a result of this review, the husband requested certain changes that were incorporated in the draft. Ultimately, at about 6:00 P.M., both the parties and their counsel signed the memorandum.

The memorandum specifically stated, "[t]he parties agree to the following terms to resolve their litigation." The memorandum then set forth the essential terms of the parties' settlement, providing, among other things, that the wife would keep her individual retirement account and other retirement funds and would be entitled to forty-five percent of the proceeds of the sale of the marital home after payment of all marital debt, $10,000 to the wife for attorney's fees and $40,000 to the husband for credit card debt. The memorandum further provided that certain bank accounts and "the $45,000 set aside for [the daughter] from her SS[D]I benefits" would be "set aside for [the daughter's] college," and that, commencing with the first month after the husband had stopped making mortgage payments on the marital home, the husband would pay "support to the wife in the amount [of] $3,000 monthly until [the daughter's] emancipation," and, thereafter, "$1,500 monthly." The memorandum also contained numerous other provisions pertaining to the division of marital assets, the husband's visitation rights, the maintenance of various medical and life insurance policies, and various other rights and responsibilities of the parties.

After signing the foregoing memorandum, the parties reported to the arbitrator that the matter had been settled. In April, 1998, the wife's attorney sent to the husband's attorney a draft typewritten separation agreement incorporating the terms of the memorandum of understanding, and also a cover letter dated April 14, 1998. The cover letter stated that the wife had not yet reviewed this draft separation agreement and, hence, the wife's attorney reserved the right to make further comments and changes to the draft. At or about this same time, the marital

home was sold and payments were made from the proceeds in accordance with the terms of the memorandum. The husband commenced making monthly support payments in May, 1998, in the amount of $3,000, also as required by the terms of the agreement.

Subsequently, in August, 1998, the husband discharged his attorney and refused to sign any separation agreement incorporating the terms of the memorandum. At a pretrial conference held before a Probate Court judge on October 5, 1998, the wife made an oral motion to enforce the memorandum and the judge held an evidentiary hearing on the motion.

Both the wife and the husband's former attorney testified at the hearing that the husband had actively participated in the negotiation of the memorandum and had had a full opportunity to review the memorandum before he signed it. The attorney further testified that he had not seen anyone pressure the husband into signing the memorandum, that he had reviewed the memorandum with the husband for approximately an hour prior to the husband's signing it, and that the husband had requested several changes that were incorporated in the memorandum. The attorney also testified that, in his opinion, the memorandum as signed was fair in light of the parties' respective assets and income.

The husband, on the other hand, testified that he had not been presented with the memorandum of understanding until the end of that day, and at that time, he was too exhausted to read it. He further testified that his attorney had not explained the terms of the agreement to him but had simply directed him to sign it.

After receiving the foregoing evidence, the judge, on November 20, 1998, entered an order allowing the wife's motion to enforce the memorandum of understanding and ordering the parties to appear before her on December 8, 1998, for a hearing on the wife's divorce complaint. The judge found that the parties had intended the memorandum to be a binding agreement between them notwithstanding their contemplation that a more formal separation agreement would be prepared incorporating the terms of the memorandum. She also found that the memorandum was free of fraud and coercion and was fair and reasonable as of the time of the order. Finally, the judge pointed

out that she found the attorney's testimony credible, and found critical portions of the husband's testimony not to be credible.

At the subsequent hearing held on December 8, 1998, counsel for the husband attempted to offer additional evidence regarding the various factors set forth in G. L. c. 208, § 34, for the determination of alimony. The judge declined to accept any such evidence or to allow counsel for the husband to make an offer of proof, on the grounds that she had already ruled on the fairness and voluntariness of the memorandum. Thereafter, the judge ordered the entry of a judgment of divorce nisi to be entered incorporating the parties' memorandum.

On December 18, 1998, the wife filed a motion pursuant to Mass.R.Dom.Rel.P. 59(e), asking the court to amend the judgment to indicate that all support payments from the husband should be neither includible as income to the wife nor deductible from income to the husband. As grounds for this motion, the wife stated that the parties, through their counsel, "had agreed that such payments would be neither includible nor deductible, because virtually all of the [h]usband's income is non-taxable; he would therefore derive no benefit from a tax deduction[,] and the result would be punitive to the wife." The judge took no action on the motion at that time.

In April, 1999, the husband unilaterally reduced his support payments to the wife from $3,000 to $2,000. In response to this action, the wife filed a complaint for contempt. On August 23, 1999, the judge found that the husband "has the ability to comply with this court's order and has knowingly and willingly violated the order." Accordingly, the judge ordered entry of a judgment directing the husband to pay the wife $5,000, "representing the support owed through the month of August."

Also on August 23, 1999, the judge entered a separate "Order on Judgment" in response to the wife's prior motion to amend the divorce judgment. The order stated that "[i]nterpreting the parties' stipulation as it is written, the Court finds that the parties intended for $1,500 monthly to be child support and $1,500 monthly to be alimony," and that "[t]he Court declines to modify the parties['] clear intent."

1. *Enforcement of the memorandum of understanding.* The husband claims that the judge erred in enforcing the parties'

memorandum of understanding and incorporating it in the subsequent divorce judgment since the parties had indicated by their conduct that they had not intended to be bound by the memorandum. The husband further claims that the judge erred in concluding that the memorandum was fair and reasonable and voluntarily entered. We reject each of these claims.[1]

a. *The binding nature of the agreement.* In finding that the parties intended to be bound by their memorandum of understanding, the judge relied on the detail and scope of the memorandum, the time and circumstances of its negotiation, the parties' report to the arbitrator that the matter had been settled, and the parties' partial performance of the memorandum after its execution. These circumstances warranted the judge's conclusion that the parties intended to be bound by the memorandum of understanding even though, as the judge noted, the parties also contemplated that a more formal separation agreement would be prepared incorporating the terms of the memorandum. See *Goren* v. *Royal Invs. Inc.*, 25 Mass. App. Ct. 137, 139-143 (1987) (preliminary agreement could properly be found to binding, even though parties contemplated execution of further "polished memorandum," where preliminary agreement resolved "all significant economic issues"). See also *Coan* v. *Holbrook*, 327 Mass. 221, 224 (1951), quoting from Restatement of Contracts § 26 (1932) ("Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof"); *Dominick* v. *Dominick*, 18 Mass. App. Ct. 85, 88-89 (1984) (oral marital separation agreement, read into the record, properly found to be binding even though wife subsequently repudiated the agreement).

---

[1]At oral argument, the husband also claimed that he was denied a fair opportunity to present evidence at the hearing held on October 5, 1998, regarding the enforceability of the memorandum of understanding because he had previously been notified only that a pretrial conference would be held on that date. In fact, on September 1, 1998, counsel for the wife had filed with the court and served on then counsel for the husband a request that an "uncontested" trial be held on October 5, 1998. Moreover, at the time the hearing was held, the husband made no claim that he needed additional time to obtain or present any additional evidence. The husband therefore waived any such claim. See Mass.R.Civ.P. 46, 365 Mass. 811 (1974).

Indeed, the memorandum of understanding was handwritten only and contained several crossouts and insertions. In these circumstances, it was reasonable that the parties would contemplate preparing a more formal, cleaned-up version of their agreement for submission to the court. The fact that the parties contemplated such a further act, by itself, does not in these circumstances suggest that they did not intend to be bound by their handwritten memorandum of understanding. See *Goren* v. *Royal Invs. Inc.*, *supra* at 140.

The husband nevertheless asserts that a mutual intent on the part of the parties not to be bound by the memorandum of understanding was shown by the fact that the typewritten draft separation agreement, which the wife's counsel sent to counsel for the husband in April, 1999, differed from the memorandum of understanding in several respects. Specifically, the husband points out that the draft separation agreement (1) denied the husband's ability to deduct alimony payments from his income in determining his income tax liability and provided that the wife did not have to include them in her income in determining her tax liability; (2) provided that the husband could visit the daughter only in the presence of his psychiatrist; and (3) provided that both parties would bear their own attorney's fees. To the extent these were differences at all, however, they were minor in scope and did not actually contradict the memorandum of understanding.[2] They did not by themselves require the judge to find that the parties did not intend to be bound by their original memorandum of understanding.

b. *The fairness of the memorandum.* In reviewing the fairness of the memorandum, the judge considered each of the factors set out in *Dominick* v. *Dominick*, 18 Mass. App. Ct. at 92.[3] The judge concluded that the provisions of the memorandum were more than equitable to the husband in light of (a) the long-term nature of the parties' marriage, (b) the disparities in the parties'

---

[2] The original memorandum of understanding also provided that both parties would bear their own attorney's fees after an initial $10,000 was paid to the wife's attorney from the proceeds of the sale of the marital home.

[3] While the husband asserts that the judge failed to consider each of the mandatory factors set forth in G. L. c. 208, § 34, in reaching her decision to enforce the memorandum of decision, it is clear from the judge's decision that she in fact did consider such mandatory factors.

incomes, (c) the husband's right to receive fifty-five percent of the proceeds from the sale of the marital residence while being obligated to pay only fifty percent of the capital gains tax due from the sale of the residence, and (d) the husband's right to receive the majority of the income available to the parties and more than half of the assets acquired by the parties prior to their separation.

The husband nevertheless asserts that the terms of the memorandum were unfair because it left him with only fifty-five percent of his "Keough" accounts while leaving the wife with her "401K and retirement plans . . . intact." The husband also complains that the $3,000 he was ordered to pay in monthly support exceeded by $1,000 the amount that would have been arrived at by application of the Massachusetts Child Support Guidelines.

In fact, it appears from the memorandum of understanding, and the judge specifically found, that the parties intended only $1,500 of the husband's monthly support payments to be attributable to child support. Thus, according to the husband's own calculations, the child support obligation established by the memorandum of understanding was less than the amount that would have been established by application of the child support guidelines. In any event, where, as here, the trial judge has considered all the appropriate factors, we will not set aside the judge's finding of reasonableness absent a clear showing of abuse of discretion. See, e.g., *Department of Rev.* v. *G.W.A.*, 412 Mass. 435, 441 (1992). No such showing has been made in this case.

c. *The husband's illness.* The husband finally claims that the judge failed adequately to take into account his OCD in determining that the memorandum was a free, voluntary, and binding agreement. More specifically, he asserts that he had not taken all of his medication during the negotiations, that he was physically and emotionally exhausted on the day of the negotiations, and that he did not read or understand the memorandum before signing it.

In fact, as we have previously noted, both the wife and the husband's former attorney testified that the husband had participated actively in the negotiations leading to the

memorandum of understanding and had had a full opportunity to review the memorandum before he signed it. The attorney further testified that he had reviewed the memorandum of understanding with the husband for approximately an hour before the husband signed the memorandum, and that the husband requested several changes that were made before the memorandum was signed. In light of this testimony, the judge specifically found "the husband's testimony that he did not understand the terms of the Memorandum, that he was coerced by his attorney to sign it, and that he did not read the Memorandum prior to signing it, to lack credibility and to be contrary to actual events." Since the husband has not even contended, much less shown, that these findings are clearly erroneous, we reject the husband's claim that he was coerced into signing the memorandum of understanding, or that he was not aware of what he was doing.

We therefore conclude that the judge properly enforced the parties' memorandum of understanding and incorporated it in the subsequent divorce judgment. See generally *Giner* v. *Giner*, 11 Mass. App. Ct. 1023, 1026 (1981).

2. *Failure to allow a credit for SSDI benefits paid to daughter.* Citing *Rosenberg* v. *Merida*, 428 Mass. 182 (1998), the husband claims that, in any event, the judge should have allowed him a credit against his support obligation for the SSDI benefits previously received for the welfare of his daughter as a result of his disability that he had retained and put aside for his daughter's benefit. See *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 451 (2000). The husband asserts these payments amounted to approximately $150 per week or $7,800 per year for the five-year period prior to entry of the divorce judgment.

In *Rosenberg* v. *Merida, supra* at 186-188, the court held that a noncustodial spouse was entitled to a credit against his ongoing support payments for SSDI benefits that had become payable to his child on account of his disability following the initial entry of a support order. The court, however, did not hold that the spouse was also entitled to a credit for benefits paid to his child in the past which he had not expended at the time, but rather had put aside for the child's future. No such issue was before the court in *Rosenberg*.

Moreover, even if the court had reached such a result in *Rosenberg*, it would not apply where, as here, the parties had specifically provided in a marital separation agreement that the noncustodial spouse would not be entitled to a credit for past SSDI benefits put aside for his daughter's education. Such agreements may be enforced so long as they are fair and reasonable, regardless of the rules that might otherwise apply. See, e.g., Massachusetts Child Support Guidelines (guidelines do not apply where "parties have made an agreement *which is approved by the court* and is found by the court to be fair and reasonable, and makes adequate provision for the support of the child" [emphasis supplied]). See also *White* v. *Laingor*, 434 Mass. 64, 67 (2001).

We therefore reject the husband's claim that he was entitled to a credit against his ongoing child support obligation for the SSDI benefits previously paid for his daughter and set aside for her benefit.

3. *The contempt judgment.* Citing *Cohen* v. *Murphy*, 368 Mass. 144, 147 (1975), the husband argues that the judge erred in adjudging him in contempt for unilaterally reducing his support payments from $3,000 to $2,000 in April, 1999. The husband apparently took this action because he believed that he was entitled to a credit for the SSDI payments received for the benefit of his daughter as a result of his disability.

In raising this argument, the husband has failed to provide us with a transcript of the contempt hearing. In the circumstances, we are unable to determine whether the argument was properly presented to the Probate Court judge and is thus properly before us. See *Shawmut Community Bank, N.A.* v. *Zagami*, 411 Mass. 807, 811 (1992).

In any event, the husband's reliance on *Cohen* v. *Murphy*, *supra*, is misplaced. In that case, the noncustodial parent became disabled after the entry of the original support order and, hence, the original support order did not address whether the noncustodial parent was entitled to any credit. See *Cohen*, *supra* at 145-146. In the present case, the husband was disabled at the time he executed the memorandum of understanding and the memorandum unambiguously provided that he would be required to make ongoing support payments in the amount speci-

fied in the memorandum. Unlike the situation in *Cohen*, the subsequent divorce judgment incorporating the memorandum of understanding was sufficiently clear and unambiguous to support the contempt judgment. See *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 340 (1990) (in order to find a defendant in civil contempt there must be a clear and unequivocal command and an equally clear and undoubted disobedience). The husband had no reasonable basis for unilaterally reducing his support payments without first obtaining a modification of the divorce judgment. See *Rosenberg* v. *Merida, supra* at 188. He was properly held in contempt for making the unilateral reduction.

4. *Appeal from order on judgment.* The husband finally contends that, in entering the order on judgment, the judge "took it upon herself, not having been asked by either party to do so," to allocate the $3,000 monthly support payment provided for in the memorandum of understanding between alimony and child support. He further asserts that the parties had "never agreed to do this."

As we have previously noted, the judge entered the order on judgment only in response to the wife's motion to amend the judgment of divorce to make clear that all support payments from the husband should be neither includible as income to the wife nor deductible from income to the husband. In rejecting this request, the judge specifically found that the parties intended that $1,500 of the husband's monthly support payment would be for alimony, while the remaining $1,500 of the support payment would be for child support. The judge plainly had power to make this finding based on the language used in the memorandum of understanding, which provided that the husband's monthly support payment would be $3,000 until Emily was emancipated, and $1,500 thereafter. See, e.g., *Ceco Corp.* v. *Bennett*, 355 Mass. 791, 792 (1969) (the construction of a written agreement is a matter of law for the court); *Cooper* v. *Cooper*, 43 Mass. App. Ct. 51, 56 (1997). The judge, therefore, did not err in entering the order on judgment.

*Conclusion.* The judgment of divorce nisi dated December 8, 1998 (which subsumes the order dated November 20, 1998, allowing the wife's motion to enforce the memorandum), the

"order on judgment" dated August 23, 1999, and the judgment of contempt dated August 23, 1999, are affirmed.

*So ordered.*