## ADOPTION OF MARIANO.[1]

No. 09-P-1392.

Franklin. November 6, 2009. - September 14, 2010.

Present: CYPHER, SIKORA, & FECTEAU, JJ.

*Parent and Child,* Adoption. *Minor,* Adoption. *Public Policy.*

A Probate and Family Court judge properly dismissed an adoption petition
filed by the mother, in which the father executed his written consent to
surrender the child, where the judge correctly concluded that the adoption
would not serve the best interests of the child, i.e., the child's economic
interests (in that the adoption would end or preclude several important
financial benefits to the child and would conflict with the public policy
that parents, not the State, should support their children) and the child's
interest in parental consortium (in that the parents' mutual antagonism and
wish for adoption did not override the child's best interests in the identifica-
tion of a biological father and in the potentiality of the guidance, companion-
ship, and affection of that biological father either in the present or the
future) [660-663]; further, the judge correctly concluded that the father's
intelligent and voluntary surrender of all parental rights and duties did not
control the merits of the adoption request [663].
In the circumstances of a proceeding on a petition to adopt, a Probate and
Family Court judge's reference to a study in a published work, made in
one of his conclusions of law, was harmless. [664]


PETITION filed in the Franklin Division of the Probate and
Family Court Department on February 25, 2009.

The case was heard by *Stephen M. Rainaud,* J.

*David P. Bodanza* for the mother.

*Dorothy Storrow* for the child.

SIKORA, J. By agreement, the divorcing parents of an infant
son proposed a single parent adoption by which the father would
relinquish all rights and duties toward the son and the mother
would assume the role of sole parent. A judge of the Probate
and Family Court conducted an evidentiary hearing, composed

---

[1]A pseudonym.

findings of fact and conclusions of law, and rejected the father's adoption surrender and the mother's adoption petition. For the following reasons, we affirm the judgment dismissing the petition.

*Background.* The facts are largely undisputed. The findings and the uncontroverted evidence relate the following. The father and mother married on December 8, 2007. Their son, Mariano, was born in January, 2008. The parents resided together with the child in a rented apartment. In early August of 2008, they separated as a result of frequent arguments and deepening friction. Their differences did not generate any allegations or evidence of domestic violence. In September of 2008, they attempted unsuccessfully to reconcile. The father last saw Mariano during that month. At the end of September, 2008, the mother filed a complaint for divorce upon the ground of irretrievable breakdown of marriage. G. L. c. 208, § 1B.

On February 25, 2009, while the divorce action remained pending, the mother filed a petition for adoption of Mariano. G. L. c. 210, § 1.[2] On the same day, the father executed an adoption surrender form in accordance with G. L. c. 210, § 2,

---

[2]General Laws c. 210, § 1, amended by St. 2008, c. 176, § 116, authorizes a "person of full age" to petition the Probate and Family Court to adopt a younger person and requires his or her spouse to join in the petition. It excuses spousal joinder (i) in instances of unexplained prolonged absence, legal separation, prolonged separation, incapacity, or unreasonable withholding of consent, (ii) if the spouses are not in the process of an ongoing divorce, *and* (iii) if allowance of the petition serves the best interests of the child. The grounds for excusal appear to be conjunctive. The second ground negating excusal for divorcing spouses would appear literally to prevent the petition here. However, neither side has raised the applicability of the negating clause to the present circumstances. We shall assume, without deciding, that the negation would not apply to divorcing biological parents, but only to the more common case in which the petitioner is not a biological parent.

None of the parties (father, mother, child) has raised any question whether an already lawful parent (the mother here) may "adopt" her child within the meaning of G. L. c. 210; or whether such a procedure is a redundancy beyond the contemplation of the statute. For the following reasons we assume, without deciding, that G. L. c. 210 authorizes such a process and that therefore the Probate and Family Court possessed jurisdiction of the petition. First, the terms of the authorizing sections literally permit such adoption. Under G. L. c. 210, § 1, "[a] person of full age may petition the probate court . . . for leave to adopt as his child another person younger than himself, unless such other person is his or her wife or husband, or brother, sister, uncle or aunt, of the whole or half blood." Under G. L. c. 210, § 2, *amended by St. 1972,*

for submission with the mother's petition. The judge heard evidence on May 1, 2009. The father and mother were the only witnesses. Counsel represented each. Appointed counsel represented the interests of the child.

The father was then a twenty-three year old high school graduate. During the eight-month duration of the household, he had held overnight employment and had paid the rent. Since his separation from the mother, he had saved and set aside $4,000 for payment of anticipated child support obligations. As of the hearing date, he had been unemployed for over two months but was actively searching for a job. Meanwhile he was living with his parents.

The father was present for the birth of Mariano. He had occasionally held the child and changed him, but had spent diminished time with him because his night shift hours caused him to sleep from approximately 8:00 A.M. to 3:00 P.M. and because the mother increasingly withdrew with the child to her own parents' home. The father did not visit Mariano after the separation because he would have had to come into contact with the mother and her parents, all of whom he viewed as hostile towards him.

The father had not explored the alternative of arranged visits with Mariano at his own parents' home. He was unsure whether he would want a relationship with the child even free of conflict with the mother. He acknowledged that he would visit the child if the court ordered such contact outside the presence of the mother. However, he believed that his surrender of parental rights would serve the interests of Mariano because any con-

---

c. 800, § 1, adoption of a child below the age of twelve requires the written consent "of the lawful parents. . . . A person whose consent is hereby required shall not be prevented from being the adoptive parent."

Decisional law supports the conclusion that an already lawful parent can become an adoptive parent. See *Curran, petitioner*, 314 Mass. 91, 94-95 (1943) (construing the cited language of § 1 literally and concluding that an adult unmarried woman may adopt "her natural child" whom she had been raising); *Adoption of a Minor*, 357 Mass. 490, 491-492 (1970) (mother and second husband may adopt mother's minor daughter by first husband); *Adoption of Tammy*, 416 Mass. 205, 211 & n.2 (1993) ("Other than requiring that a spouse join in the petition, if the petitioner is married and the spouse is competent to join therein, the statute does not expressly prohibit or require joinder by any person"; adoption of child by her mother and mother's companion affirmed).

tinued association between the mother and father would fuel animosity harmful to the child. He felt no bond with the child. He had executed the adoption surrender form after much discussion with his family members and attorney.

The mother was a twenty-four year old high school graduate. She earned $251 per week as a licensed hairdresser. Mariano and she continued to live with her parents. Those grandparents provided financial assistance and child care. Both were in their late fifties and were not regularly employed. The mother believed that her adoption would serve the best interests of Mariano because the father had little benefit to offer the child, and because she was providing him with ample health, safety, happiness, and affection.

The judge determined that the mother could provide "love, nurturance and security" for Mariano and that a relationship between Mariano and his father did not "currently" exist. However, he observed further that it is not the wishes of the parents but rather the best interests of the child that determine adoption, with citation to *Adoption of Tammy*, 416 Mass. 205 (1993). He concluded that in this instance the preservation of a connection between Mariano and his father served the best interests of the child and maintained a link to his biological identity. The judge ordered the entry of judgment dismissing the petition for adoption. The mother has appealed. Counsel for the father has joined in the submission of the mother's appellate brief. Counsel for Mariano has submitted a comprehensive appellee's brief and responsive oral argument.[3]

*Analysis.* The mother appeals on three grounds: (1) that the judge incorrectly calculated the best interests of Mariano because no relationship linked him to his father and a successful relationship bound him to his mother; (2) that the father's intelligent and voluntary surrender deserved implementation; and (3) that the judge's reliance upon the child's long-term interests in a relationship with his biological father lacked proper evidentiary support.

1. *Standard of review.* The proponent of the adoption of a child must satisfy the statutory requirements of that process. *Adoption of Tammy*, 416 Mass. at 212-214. The burden of proof

---

[3]The child's counsel on appeal was not his trial counsel.

falls naturally and appropriately upon the petitioner proposing an important change in the legal status of the child's life, here the mother.[4] The fundamental substantive requirement of adoption in Massachusetts is firmly settled. "The primary purpose of the adoption statute, particularly with regard to children under the age of fourteen, is undoubtedly the advancement of the best interests of the subject child." *Id.* at 210, citing G. L. c. 210, §§ 3, 4A, 5A, 5B, 6, and collected cases. In turn, because the best interests of a child will typically become a circumstantial determination, the review of the trial judge's decision is an inspection for abuse of discretion. See *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999); *White* v. *Laingor*, 434 Mass. 64, 68 (2001). Under a traditional formulation, a trial judge's decision does not abuse discretion unless it constitutes "an arbitrary determination, capricious disposition, or whimsical thinking" or "idiosyncratic choice." *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 433 (1979), quoting from *Davis* v. *Boston Elev. Ry. Co.*, 235 Mass. 482, 496 (1920). Discretion "imports the exercise of discriminating judgment within the bounds of reason." *Davis* v. *Boston Elev. Ry. Co.*, *supra*. We ask whether the judge has reached a result outside the bounds of reasonable alternatives.

2. *The calculation of the child's best interests.* The judge's preservation of a parental relationship between the father and the child rests well within the boundaries of sound discretion. It serves the "best interests" of the child as illustrated in the leading cases. Allowance of the petition of the mother and the surrender of the father would have irrevocably ended Mariano's connection with the father. In the words of G. L. c. 210, § 6, a decree of adoption will "terminate" "all rights, duties and other legal consequences" between a biological parent and child.[5]

a. *The child's economic interests.* Allowance of the adoption

---

[4]As appellate counsel for the child points out, the applicant for an alteration in a child's familial ties typically assumes the burden of supportive proof of justification for the change. See, e.g., *In the Matter of Angela*, 445 Mass. 55, 64 (2005) (child in need of services petitioner has burden of proof at dispositional hearing for removal of child from parent); *Care & Protection of Ian*, 46 Mass. App. Ct. 615, 616 (1999) (burden of proof in care and protection case rests upon the petitioner).

[5]General Laws c. 210, § 6, excepts situations involving certain forbidden acts or "marriage, incest or cohabitation."

here would end or preclude several important financial benefits to Mariano. The judge did not discuss them specifically, but did cite *Adoption of Tammy, supra* at 214, in which the court itemizes a child's financial benefits as elements of his best interests at a "most practical level." The court decided *Tammy* more than fifteen years before the trial proceedings of our case. The evidence at the hearing in this case included data about the earnings and employment of the parents. The economic welfare of Mariano was a factor visible to all parties in the adoption proceeding. Mariano's appellate counsel argues that the adoption would undermine his economic best interests. That contention is permissible and fair even though the judge did not specifically rely upon it. "An appellee may generally argue any issue, fairly open on the record, that supports the decision below." *New England Tel. & Tel. Co.* v. *Gourdeau Constr. Co.*, 419 Mass. 658, 662 n.5 (1995). See *Boston Edison Co.* v. *Boston Redev. Authy.*, 374 Mass. 37, 43 (1977).[6]

Most immediately, adoption would terminate Mariano's right to child support from his father. G. L. c. 208, § 28. It would prevent his eligibility for coverage under the father's health insurance policies and his eligibility for Social Security benefits in the event of the father's disability or death. 42 U.S.C. § 402(d) (2010). It would also disqualify him from inheritance from the father and the father's family under the laws of intestacy. G. L. c. 210, § 7. See *Adoption of Tammy, supra.* If Mariano's mother were to die or become incapable during his minority, no second parent would be available with the right and duty to care for him. If Mariano were to suffer debilitating illness or injury causing temporary or permanent special needs, no second parent would serve as an additional resource for him.

These actual and potential losses are significant in Mariano's circumstances. His mother earned $251 per week and relied upon the support of her parents for housing and child care. The mother's parents were in their late fifties and not regularly

---

[6]The mother did not submit a reply brief in response to Mariano's discussion of his economic interests in his brief. In these circumstances, the subject does not inflict any unfair appellate surprise upon the parents. "A party may defend a judgment on any ground based on the record so long as raising the argument is not unfair to its opponent." *Perseus of N.E., MA, Inc.* v. *Commonwealth*, 429 Mass. 163, 168 (1999), and cases cited.

employed. Mariano faces a childhood with a seemingly thin margin of economic safety.

Finally, an important public interest converges with Mariano's private interest. "The child support scheme in Massachusetts furthers two important goals: '(1) providing for the best interests of the children, and (2) ensuring that the taxpayers are secondary to the parents in meeting the financial needs of dependent children.' " *Adoption of Marlene*, 443 Mass. 494, 501 (2005), quoting from *Department of Rev.* v. *Mason M.*, 439 Mass. 665, 669 (2003). See G. L. c. 119A, § 1. Adoption by one parent would heighten the risk of Mariano's need for public assistance. It would conflict with "the public policy that parents, not the State, should support their children." *Adoption of Marlene, supra.*

b. *The child's interest in parental consortium.* A second category of the child's best interests is his "unique filial ties" to a parent. *Adoption of Tammy, supra.* In this instance the judge focused on the benefit of a parental identity for the child. "[Mariano] shares a unique physical, genetic and ethnic connection with his birth father. He is entitled to share this unique connection." Massachusetts law recognizes children's interests in parental consortium as "filial needs for closeness, guidance, and nurture." *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 516 (1980). It consists at least of a "parent's society and companionship." Nolan & Sartorio, Tort Law §§ 9.2(4), 13.8 (3d ed. 2005). Consortium obviously requires the mutual identification of the parent and the child.

In his testimony, the father displayed some equivocation about his decision to terminate all involvement with Mariano. He was not adamantly opposed to all contact with the child. Rather, his aversion for the mother appeared to induce his remoteness from the child. That circumstance does not support a complete severance from the child. Mariano's entitlement to the potential consortium of a father remains intact even against the present will of the father. The judge captured the point in a conclusion of law. "Perhaps he has not formed a relationship with his father as in many families, but does that require the court [to deny] his right to such a relationship? The fact that his parents are incompatible and disagree on many issues is not persuasive and certainly not controlling." The parents' mutual

antagonism and wish for adoption do not override the child's best interests in the identification of a biological father and in the potentiality of the guidance, companionship, and affection of that biological father either now or later. Adoption would minimize or eliminate that potentiality.

In this instance the child has an important interest in the reservation of the father's option for a change of mind or heart over time. A young parent in the emotion of divorce is poorly situated for an irrevocable decision of severance from a biological child. By surrender of his parental rights he would foreclose his opportunity to evolve from a biological father to a competent father; and would foreclose the opportunity of the child to receive the wealth of benefits, tangible and intangible, provided by a dedicated father. Denial of the petition for adoption preserves those possibilities for Mariano.[7]

3. *Implementation of the father's surrender.* From this analysis, it follows that the intelligent and voluntary nature of the father's surrender of all parental rights and duties does not control the merits of the adoption request. The objectively determined best interests of the child, and not the subjective wishes of the parents — no matter how well informed — are decisive. The argument in support of the deliberateness of the father's choice is immaterial.[8]

---

[7]As appellate counsel for Mariano points out, while the parents gain the desired benefits of complete separation, Mariano loses all the benefits latent in one of his two parents and receives nothing in return. Contrast *Adoption of Willow*, 433 Mass. 636, 644-645 (2001) (termination of mother's rights would eliminate abuse and neglect, and bring stability to the children's lives). Contrast also the category of cases in which a third person joins a biological parent in a petition to adopt a child and imports a new set of benefits offsetting the loss of the other biological parent's relationship. Even that generic arrangement requires judicial supervision and approval for the best interests of the child. See *White* v. *Laingor*, 434 Mass. at 66-69.

In such cases as *Adoption of Willow, supra,* severance from a harmful biological parent may well serve the best interests of a child. Cases are conceivable in which the elimination of even the identity of a biological parent may serve those interests. However, nothing in the evidence of the present case indicates that continued relations or contact with the father would endanger or harm the interests of Mariano.

[8]As we have noted, under cross-examination the father showed some willingness to maintain contact with Mariano and indicated that his reluctance to remain a parent was primarily a reluctance to have contact with the mother.

Adoption of Mariano.

4. *The judge's reference to family law studies.* In his final conclusion of law, the judge cited studies in a published work[9] in support of a child's desire for the identification of biological parents. On appeal, the mother (joined by the father) challenges the reference as the use of treatise material neither proper for judicial notice nor offered into evidence at the adoption hearing.

In the setting of the entire evidence and the governing law, we view the reference as harmless. The judge cited it in the course of a ruling or conclusion of law, and not as a finding of fact. His actual findings, the supportive evidence, and his abundant references to the controlling legal standard of the best interests of the child and the leading case law demonstrate the accuracy of his reasoning and the result.[10]

*Conclusion.* This case illustrates a firm principle in Massachusetts family law. In the negotiation of their disengagement, divorcing parents may not bargain away the best interests of their children in general, and the children's right to support, financial or otherwise, from either one of them in particular. See *Knox* v. *Remick*, 371 Mass. 433, 437 (1976); *Wilcox* v. *Trautz*, 427 Mass. 326, 334-335 n.7 (1998); *White* v. *Laingor*, 434 Mass. at 66; *Quinn* v. *Quinn*, 49 Mass. App. Ct. 144, 146 (2000). The judge correctly ordered dismissal of the petition for adoption.

*Judgment affirmed.*

---

[9]The judge cited "Miriam Reitz and Kenneth M. Watson, Adoption and the Family System, 4-7 (1992)."

[10]The presentation of a finding or conclusion as a quotation from a general publication deviates from the requirement of Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996): "In all actions tried upon the facts without a jury, the court shall find the facts specifically and state separately its conclusions of law thereon." Findings should appear in clear and specific firsthand language. Conclusions may naturally quote from recognized sources of law.